*In re* MARRIAGE OF VENUS KAPLAN, Petitioner-Appellee, and MARVIN KAPLAN, Respondent-Appellant.

First District (1st Division)   No. 84—2566

Opinion filed November 3, 1986.

26

Kalcheim, Schatz, Ltd., of Chicago, for appellant.

Robert Gordon, of Gordon & Gordon, Ltd., of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Respondent, Marvin Kaplan, appeals from the entry of a supplemental judgment resolving financial issues incident to the dissolution of his marriage with petitioner, Venus Kaplan. It is urged on appeal that the trial court erred: (1) in finding petitioner's testimony to be credible; (2) in permitting a witness for petitioner to testify in rebuttal; (3) in relying on inaccurate hearsay documents; (4) in the division of marital property and the allocation of marital debts; (5) in awarding rehabilitative maintenance to petitioner; (6) in awarding fees to petitioner's attorney and the attorney for the minor child; (7) in failing to determine reasonable fees for respondent's attorneys; and (8) in failing to adjudicate financial responsibility for college expenses for the minor child. We affirm.

The parties were married on April 27, 1962, and had one adopted son, Bradley, born on November 16, 1966. They separated on May 1, 1977, and judgment for dissolution of marriage was entered on August 8, 1978. Custody of the minor child was granted to respondent following a contested hearing on May 16, 1983.

At the time of the hearing on financial issues, which did not take place until October 24, 1983, petitioner was approximately 43 years old and respondent was 48. Petitioner testified that at the beginning of the marriage she had worked as a legal secretary for three years. After the separation she worked as a travel agent from 1977 until April of 1983, earning a gross income of approximately $12,000 per year. Petitioner also testified that she had a thyroid problem, a hiatal hernia, and peptic ulcers. She has not been hospitalized for these conditions, but testified that these medical problems interfere with her ability to work. Respondent is a manufacturer's sales representative and prior to the parties' separation had his own business incorporated as Marvin Kaplan and Associates.

During the marriage, the parties purchased a house in Northbrook. At the time of trial it was appraised at $127,000 and had an

outstanding mortgage balance of $20,500. Between November 1977 and March 1978, respondent paid petitioner temporary support of $1,000 per month and from April 1978 until March 1981, he paid her $600 per month. The parties had two cars, a 1977 Corvette and a 1982 Datsun.

Testimony at the contested hearing on property and maintenance conflicted in numerous respects or was uncorroborated. Petitioner claimed that she had worked as a secretary for her husband's business from 1972 until 1977, earning $400 per month. She stated that she was on the payroll, but that checks made out to her were put back into the company. She also stated that she assisted respondent at various trade shows and that respondent had made $10,000 per year in unreported earnings from selling samples at these shows.

Respondent testified that petitioner was put on the payroll only for social security purposes. He stated that he drew a check for $600 each month in his name and one for $400 in her name. He further testified that the majority of his work involved calling on stores and that petitioner had not assisted in that work. He also denied that she had assisted him at any trade shows between 1975 and 1978 and stated that when she had attended them previously it was primarily for social rather than professional reasons. He denied receiving any monies from sales of samples at trade shows.

Testimony was introduced regarding the amounts of income reported by respondent between 1976 and 1983. There were disparities between the amounts reported on State and Federal income tax forms for the same years, and deposits and withdrawals from respondent's various bank accounts over a period of years were not consistent with respondent's reported income. Respondent also testified that his business was transacted entirely on a cash basis for the years in question.

The parties also disputed the source of funds used as a down payment on the marital home. The wife testified that she had borrowed $10,000 from her mother in 1966 to make the down payment, although the home was not purchased until 1969. She stated that she had executed judgment notes regarding the loan, but that she had no copies of the notes. Respondent testified that the down payment came entirely from commissions from his sales accounts.

Both of the parties alleged that they had borrowed substantial amounts from family or friends between the dissolution of the marriage and the hearing on financial matters. The wife testified that she had received $900 per month from her mother to pay for the mortgage and other living expenses and estimated that she owed her mother $80,000. She also testified that she had borrowed approxi-

mately $2,000 from her brother and $27,411.50 from a friend, Thomas Edmire.

Respondent testified that he had borrowed about $8,000 from his mother, $2,000 from his sister, and various sums from friends. He also testified that he borrowed the credit card of a friend for convenience purposes and wrote checks in payment directly to American Express. In addition to the sums he borrowed between 1979 and 1983, he also made loans in excess of $7,000 and gave $10,000 to a woman friend.

Following the hearing, the trial court entered an order allocating the debts and assets of the parties and granting petitioner temporary maintenance for three years. A separate hearing on attorney fees resulted in an order directing respondent to pay 75% of petitioner's attorney fees as well as his own fees and those of the minor child. This appeal followed.

We turn first to respondent's contention that the trial court erred in attaching any weight to petitioner's credibility. He argues that reversal is required where the outcome might have been different if the error had not occurred, citing *In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 345, 461 N.E.2d 447. The thrust of respondent's argument is that the disposition of marital property would have been different had the court not found petitioner's testimony regarding various loans made to her to be credible. He maintains that petitioner's testimony on October 25, 1983, regarding her alleged loans from Thomas Edmire, was perjured and that she tampered with evidence, creating fictitious debts, in order to give the impression that she had had serious financial problems since the parties' separation. In support of this argument, respondent cites petitioner's testimony in a previous proceeding on March 11, 1980, at which she had testified that she had no outstanding debts.

■ We reject respondent's argument that the trial court erred in finding petitioner's testimony credible. It is a well-established rule that the credibility of witnesses should be left to the trier of fact because it alone is in the position to see the witnesses, observe their demeanor, and assess the relative credibility of witnesses where there is conflicting testimony on issues of fact. (*In re Marriage of Dulyn* (1980), 89 Ill. App. 3d 304, 309, 411 N.E.2d 988; *In re Marriage of McGowan* (1980), 84 Ill. App. 3d 609, 615, 405 N.E.2d 1156.) Such a determination will not be disturbed on appeal unless it is manifestly against the weight of the evidence. *In re Marriage of Ligas* (1982), 110 Ill. App. 3d 1, 6, 441 N.E.2d 1277.

■ Without detailing them, we note that the record shows numerous inconsistencies in the testimony of both respondent and peti-

tioner regarding financial matters. The court was faced with the task of evaluating the conflicting testimony and making a determination as to the relative credibility of the witnesses. We cannot say that the court's findings regarding loans and expenses of the parties were against the manifest weight of the evidence. We hold, therefore, that the court did not err in finding petitioner's testimony to be credible.

■ We likewise reject respondent's argument that the trial court erred in permitting petitioner's witness, Thomas Edmire, to testify in rebuttal after respondent had made a motion to exclude all nonparty witnesses from the courtroom.

At trial petitioner introduced a collection of cancelled checks in the amount of $27,411.50 drawn on Thomas Edmire's account and payable to cash, petitioner, or himself. All of the checks showed petitioner's endorsement, and petitioner testified that the endorsement evidenced that the checks represented loans to her from Thomas Edmire.

Following her testimony, an audit supervisor from Edmire's bank testified for respondent. He produced xerox copies of the checks that had been made by the bank at the time the checks were negotiated. At the time of negotiation, the checks contained only Edmire's endorsement. On rebuttal, petitioner testified that she had endorsed the checks after they had been paid but prior to her direct testimony.

Thomas Edmire remained in the courtroom during the testimony by the audit supervisor. He was subsequently recalled to the witness stand and testified that he had negotiated the checks and given the money to petitioner and that petitioner later endorsed the checks as verification of the loans.

Although the court may order the exclusion of a witness who is not a party during the taking of testimony, such exclusion is not a matter of right but rests within the discretion of the trial court. (*Noone v. Olehy* (1921), 297 Ill. 160, 173, 130 N.E. 476.) Moreover, since Edmire was testifying in rebuttal (see *Hogg v. Fannie May Candy Shops, Inc.* (1944), 321 Ill. App. 640, 640-41, 53 N.E.2d 494), and since there was no prejudice to respondent shown, we find no abuse of discretion. *Darling v. Charleston Community Memorial Hospital* (1964), 50 Ill. App. 2d 253, 322, 200 N.E.2d 149, *aff'd* (1965), 33 Ill. 2d 326, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204.

■ Also in regard to Thomas Edmire's testimony, respondent submits that it was error to allow the testimony in rebuttal, as it should have been introduced in petitioner's case in chief. That testimony might have been admissible in chief does not, however, render it

improper in rebuttal. (*Brown v. Sexner* (1980), 85 Ill. App. 3d 139, 149, 405 N.E.2d 1082.) In a bench trial, it is not an abuse of discretion for the court to allow testimony in rebuttal which should have been offered in chief. *Brelsford v. Community High School District No. 36* (1927), 328 Ill. 27, 30, 159 N.E. 237.

■ Respondent also contends that the trial court erred in placing heavy reliance on inaccurate hearsay documents and that the documents were allowed into evidence without a proper foundation. The documents referred to included, among others, petitioner's expense affidavits, Thomas Edmire's cancelled checks and work sheets, and charts summarizing the activity in various of respondent's bank accounts.

Simply stated, the rule is that when the original documents are voluminous and cannot be conveniently examined to extract the fact to be proved, any competent witness who has seen the originals may testify to the fact, provided it is capable of being ascertained by calculation. (*LeRoy State Bank v. J. Keenan's Bank* (1929), 337 Ill. 173, 191, 169 N.E. 1; *612 North Michigan Avenue Building Corp. v. Factsystem, Inc.* (1977), 54 Ill. App. 3d 749, 752, 370 N.E.2d 236, *appeal denied* (1978), 71 Ill. 2d 601.) It is generally required that the documents that are summarized be available in court or at least made available to the opposing party. *Murray v. Kleen Leen, Inc.* (1976), 41 Ill. App. 3d 436, 443, 354 N.E.2d 415; 4A Wigmore, Evidence sec. 1230 (Chadbourne rev. ed. 1972).

■ In the instant case, petitioner was allowed to testify from various charts and summaries regarding her living expenses and the amounts of maintenance and child support paid during the parties' separation. The record shows that, although not all of the expenses testified to were represented by receipts, petitioner substantially complied with the requirement that the underlying documents be made available to opposing counsel. The testimony of petitioner, based on her summaries of the available checks and household records, coupled with the production of these records to opposing counsel and the court, provided a sufficient basis for the court to ascertain petitioner's reasonable living expenses. In addition, we find that the oral testimony of petitioner and Thomas Edmire constituted a proper foundation for the admissibility of the challenged exhibits.

■ Respondent also contends that the trial court erred in its division of property and allocation of debts. Respondent argues that the inequity stemmed from the court's erroneous finding that respondent had dissipated marital assets.

The standards for division of marital property are set out in sec-

tion 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1983, ch. 40, par. 503(d)). The trial court must consider all relevant factors under section 503(d), which in this case include:

"(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

\* \* \*

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(8) the custodial provisions for any children;

(9) whether the apportionment is in lieu of or in addition to maintenance; [and]

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income." Ill. Rev. Stat. 1983, ch. 40, par. 503(d).

We start with the premise that the trial court has broad discretion under the Act to make an equitable apportionment of marital property (*In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 971, 441 N.E.2d 336), and a judgment allocating property will not be disturbed on appeal absent an abuse of discretion (*In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 564, 425 N.E.2d 1146). Discretion is abused only if no reasonable person could take the view adopted by the trial court. *In re Marriage of Borg* (1981), 96 Ill. App. 3d 282, 287, 421 N.E.2d 214.

The trial court here had to apportion assets worth approximately $123,000 and debts in the amount of $136,212.57. Petitioner was awarded the house, with an equity of $106,500, and an automobile valued at $6,500. The court also charged her with the $2,000 loan from her brother, the $27,415 loan from Thomas Edmire, and $57,948.72 of the $80,000 loan from her mother. Respondent was awarded an automobile valued at $10,000 and stock certificates worth about $1,000.

Based on the difference between respondent's reported earnings

and his bank deposits and on tax deficiencies assessed by the Internal Revenue Service and the Illinois Department of Revenue, the trial court found that respondent had had unreported income of approximately $25,000 between 1979 and 1982. The court found that the use of this money by respondent constituted dissipation as did the $10,000 gift to a woman friend. Both amounts were therefore credited to him as though they had been marital assets. The court also took into consideration that petitioner had expended over $30,000 to maintain the marital home and credited respondent with $15,000 of that amount. Respondent now contends that even if he had had the use of these funds, pursuant to *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 517-18, 386 N.E.2d 517, it would not constitute dissipation as they were not used at a time when the marriage was undergoing an irreconcilable breakdown. We disagree.

■ Whether a given course of conduct constitutes dissipation within the meaning of the Act depends on the facts of the individual case. (See *In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 719, 463 N.E.2d 773.) The determinative issue here is not the precise time at which the dissipation occurred but the fact that respondent used marital property for his own benefit and for a purpose unrelated to the marriage during a period when only he had access to the funds. See *In re Marriage of Wellwig* (1981), 100 Ill. App. 3d 452, 462, 426 N.E.2d 1087.

Six years elapsed between the entry of the judgment dissolving the marriage and the supplemental judgment as a result of respondent's action to vacate a prior agreement and petitioner's appeal of an order vacating the judgment for dissolution of marriage. The trial court found that, during this time period, respondent had access to about $35,000 in marital assets while petitioner was forced to borrow heavily to support herself and maintain the marital home.

■ Contrary to respondent's assertion that petitioner received all of the assets and respondent was assigned all of the debts, it appears that the trial court made a conscientious effort to allocate both assets and debts equitably in accordance with the requirements of section 503(d). The record shows that the trial court considered the extent to which both parties contributed to the acquisition of marital assets during the 15-year marriage, including petitioner's contribution to respondent's business. The court also considered the health and employment history of petitioner and the fact that she had less potential for acquiring assets in the future. (See *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126.) Accordingly, we find no abuse of discretion either in the division of property or in the finding

of dissipation.

Respondent next argues that the trial court's award of maintenance was an abuse of discretion. He contends that the amount is too great and the duration too long considering petitioner's age and employment history, her ability to work, the disproportionate amount of property she received, and respondent's other financial obligations.

An award of maintenance, like the distribution of marital property, is within the discretion of the trial court and will not be reversed on appeal unless it constitutes an abuse of discretion or is against the manifest weight of the evidence. (*In re Marriage of Johnson* (1982), 106 Ill. App. 3d 502, 508, 436 N.E.2d 228.) In order to determine whether the award was proper, it must be reviewed in light of the statutory factors set out in section 504 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 504).

The court may award maintenance where it finds that the spouse seeking maintenance lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs and is unable to support herself or otherwise lacks sufficient income. (Ill. Rev. Stat. 1983, ch. 40, par. 504(a).) The factors to be considered in determining the amount and duration of an award include:

"(1) the financial resources of the party seeking maintenance, including marital property apportioned to him ***;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties; [and]

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." Ill. Rev. Stat. 1983, ch. 40, par. 504(b).

After consideration of these factors, the trial court awarded petitioner rehabilitative maintenance for three years in decreasing amounts of $2,000 per month for 12 months, $1,800 per month for 12 months, and $1,500 per month for the final year. The award was subject to review at the end of that time based on the circumstances of the parties.

Respondent correctly states that a spouse applying for maintenance has an affirmative duty to seek gainful employment. (*In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 328, 453 N.E.2d 748; *In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 568, 425

N.E.2d 1146.) However, here the record shows that, although petitioner is only 43 years old, her educational and employment backgrounds are limited and she has had health problems that have interfered with her most recent employment as a travel agent. We note *that even when she was employed full-time as a travel agent, she* earned approximately $1,000 per month in gross salary during a period when respondent's reported annual income was $83,667.85. In awarding rehabilitative maintenance, the court appears to have considered *not only the disparate incomes, but that petitioner was tempo-*rarily unemployed and in need of assistance to prepare for employment in the future. See *In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 721, 463 N.E.2d 773; *In re Marriage of Bramson* (1981), 100 Ill. App. 3d 657, 659, 427 N.E.2d 285.

Contrary to respondent's assertion, the trial court did· consider the property division in awarding temporary maintenance to petitioner. It was agreed that maintenance would cease if the house should be sold. The court also stated that maintenance would cease upon the death of respondent or if petitioner remarried or resided with anyone on a permanent conjugal basis.

Although the court, during the hearing on maintenance, did not specifically address the question of respondent's financial situation, the basis for the award is adequately established in the record and has been discussed elsewhere in this opinion. (See *In re Marriage of Cook* (1983), 117 Ill. App. 3d 844, 852, 453 N.E.2d 1357; *In re Support of McGrew* (1980), 90 Ill. App. 3d 27, 31, 412 N.E.2d 996; Ill. Ann. Stat., ch. 40, par. 504(a), Historical and Practice Notes, at 523 *et seq.* (Smith-Hurd 1979).

■■ Although much of the testimony upon which the award based was contradictory, on review we believe the award was within the discretion of the court. In our opinion, the trial court gave due consideration to all of the requisite factors, including petitioner's potential for employment, the division of property, and respondent's financial situation.

■■ Respondent next contends that, in light of his lack of financial resources, the order of the trial court directing him to pay 75% of petitioner's attorney fees, in the amount of $17,250, and the attorney fees for the minor child was an abuse of discretion. He also argues that the court erred in failing to adjudicate and award fees to respondent's attorney.

Although the payment of attorney fees is the primary obligation of the party for whom the services are rendered (*In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 276, 411 N.E.2d 947), the court

has discretion to award such fees where a party can show inability to pay and the ability of the other spouse to do so (*In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 814, 439 N.E.2d 1005).

Petitioner here is an unemployed travel agent who earned approximately $1,000 per month in her former employment. At present, her sole income is the temporary maintenance award. Other than this award, petitioner's only substantial asset is the marital home. To require her to sell this asset and deplete her reserves to pay attorney fees would defeat the trial court's efforts at equitable distribution. See *Kenly v. Kenly* (1977), 47 Ill. App. 3d 694, 697, 365 N.E.2d 379.

Although contradictory evidence was presented as to respondent's actual income, he reported earning in excess of $83,000 in 1983 and $76,000 in the eight months prior to the filing of the fee petition. Since the trial court based its award of fees to petitioner on the parties' relative economic positions during the litigation and on respondent's greater ability to acquire assets in the near future, the trial court did not abuse its discretion in ordering respondent to pay 75% of petitioner's attorney fees and the fees of the minor child.

Respondent also contends that the fees awarded were not reasonable or necessary and were not supported by proper time records as required by law; that the petition for attorney fees filed by petitioner's counsel contained numerous inaccuracies and did not distinguish adequately between office time and court time; and that petitioner's attorney is not a family-law specialist and therefore should be compensated at a lower hourly rate.

The criteria for determining whether fees are reasonable include the skill and difficulty of questions in issue, amount and importance of subject matter, degree of responsibility, usual and customary charges, and benefits resulting to client. (*In re Marriage of Armstrong* (1982), 107 Ill. App. 3d 217, 219, 437 N.E.2d 761, *appeal denied* (1982), 91 Ill. 2d 567.) The fees allowed should be fair both to the party required to pay and to the attorney requesting fees (*In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1118, 421 N.E.2d 1308, *appeal denied* (1981), 85 Ill. 2d 563), and the time charged for must have been necessary to handle the matter involved (*Christian v. Christian* (1979), 69 Ill. App. 3d 450, 459, 387 N.E.2d 1254, *appeal denied* (1979), 75 Ill. 2d 589). Applying these criteria, we conclude that the award of fees to petitioner's attorney in the amount of $17,250 was proper.

The original itemized petition requested fees and costs in the amount of $27,716.05. Time was billed at $125 per hour for court

work and $100 per hour for office work. Associate counsels' time was billed at $75 per hour. After reviewing the time records and the files, the trial judge disallowed time spent contesting a contempt order that had been entered against attorneys for both parties. He also considered the attorney's practice of billing in half-hour blocks of time and rounded some of these time periods down. After considering respondent's ability to pay, he reduced the final award to $23,000, of which respondent was ordered to pay 75% ($17,250). See *In re Marriage of Cabaj* (1983), 118 Ill. App. 3d 789, 793, 455 N.E.2d 822; *In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55, 63, 446 N.E.2d 1198.

The trial court found that, although the issues were not unusually complex, the case involved 10 days of trial and the issues of custody, property maintenance, and fees were all highly contested. He further found that due to the volume and nature of exhibits involved, a mastery of the rules of evidence and litigation procedure was of more significance than specialization in the area of family law. We do not dispute the trial judge's findings in this regard.

■■■ Respondent also asserts that the court erred in failing to adjudicate and award a specific dollar amount as reasonable fees for his own attorneys.

During the hearing on fees, respondent's attorney asked the trial court to make a finding as to what would constitute reasonable fees for respondent's attorneys. The trial judge declined to do so, but stated that if the issue was raised in an adversarial context before the judgment was signed or within 30 days, he would make the necessary findings. We believe the trial court did not err in declining to determine the amount of fees owing to respondent's attorney as that issue was not properly before the court. See *Seniuta v. Seniuta* (1977), 49 Ill. App. 3d 329, 331, 364 N.E.2d 327.

■■■ Respondent's final contention is that it was an abuse of discretion for the trial court to refuse to allocate the college expenses of the minor child between the parties. He submits that there was ample evidence in the record as to Bradley Kaplan's admission to Bradley University for the fall 1984 term, as to the costs for tuition, room and board, books, and fees and as to the relative financial circumstances of the parties.

Rather than allocate fixed dollar amounts between the parties, the trial court ruled that both parties would be held responsible in accordance with their financial abilities and commensurate with Bradley's needs pursuant to section 513 (Ill. Rev. Stat. 1983, ch. 40, par. 513). The court based its decision on the fact that it would be six months before Bradley enrolled and there was some expectation that peti-

tioner would be employed by that time and therefore able to take on a share of the college expenses. On these facts, we find there was no abuse of discretion and we therefore affirm the decision of the trial court.

Judgment affirmed.

QUINLAN, P.J., and BUCKLEY, J., concur.