PATRICIA LEE FRITCH, Plaintiff-Appellee, v. DENNIS R. FRITCH, Defendant-Appellant.

First District (5th Division)   No. 1—89—2824

Opinion filed December 20, 1991.

Egan & Trapp, of Chicago (Robert A. Egan and David W. Koivun, of counsel), for appellant.

Robert Gonnella, and Onesto, Giglio, Meltreger & Associates, of Chicago, for appellee.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Patricia Lee Fritch (plaintiff) filed suit against her former husband, Dennis R. Fritch (defendant), requesting child support arrearages and contribution for a child's college expenses. After a hearing, the court found defendant liable for $19,930 in child support arrearages and for $16,800 in college expenses. The trial court also entered a contempt finding against defendant. Defendant appealed. We consider the following issues: (1) whether the trial court erred by entering a contempt finding against defendant as a means to enforce payment of the child support arrearages; (2) whether the trial court's findings of child support arrearages were against the manifest weight of the evidence; (3) whether the trial court's award for college expenses was an abuse of discretion; (4) whether the trial court erred finding defendant liable for the college expenses over defendant's objection that he had a right to prior consultation; and (5) whether the trial court erred by not barring plaintiff's claims pursuant to the doctrines of equitable estoppel and *laches*.

We affirm in part and reverse in part.

Relevant to this appeal are the following facts as disclosed by the record. Plaintiff and defendant were married in Chicago, Illinois, on December 18, 1965. Plaintiff and defendant were divorced on January 21, 1971. Three children were born during the marriage: Denise Lee Fritch, Dennis Ray Fritch II, and Daniel Anthony Fritch. The youngest child reached the age of majority in October 1987.

During the pendency of the divorce proceeding, plaintiff and defendant entered into a written marital settlement agreement (Agreement) which was incorporated into the divorce judgment. The Agreement provided that plaintiff would have custody of the three

children and that defendant would pay $64 per week in child support. Defendant was also responsible for the medical expenses of the children. The Agreement provided further that defendant would pay for the college and professional school expenses of the children including tuition, books, board, lodging, and various other fees and charges. Defendant's obligation for college expenses was conditioned upon three factors: (1) the child has the desire and aptitude for college or professional school; (2) the education be limited to two or four years with certain exceptions; and (3) the defendant have the financial ability to pay the education expenses.

Between 1972 and 1979 plaintiff filed three petitions requesting increases in child support or alleging arrearages in child support payments. In 1975 the child support was, in fact, increased to $74 per week. The petition filed in 1979 never reached a final disposition.

On February 8, 1988, plaintiff filed the instant petition. In count I of the petition, plaintiff alleged arrearages in child support from 1978 to 1987 totaling $31,680. Plaintiff requested the court to find defendant in contempt for his willful failure to pay child support. In count II of the petition, plaintiff sought contribution toward the college expenses of one of the children, Denise. Defendant's answer to count II admitted, in part, his financial ability to pay for the college expenses.

On October 7, 1988, the court held a hearing on the petition. The following is a summary of the testimony at the hearing.

Plaintiff testified that after her divorce in 1971, she lived in an apartment in Chicago with her three children for one year. Then, from 1972 to 1987, she lived in a house in Chicago with her mother, her stepfather, and her three children. Her mother owned the house.

Plaintiff testified that she received her last child support payment from defendant in April 1978. Prior to that point, defendant mailed money orders in the amounts of $64 or $10 as payment of child support. She never received money orders in the amount of $74.

Plaintiff did not see defendant from 1974 until the summer of 1979. One day in the summer of 1979, defendant arrived at the family's house. The children talked to defendant, and plaintiff's mother invited defendant to stay for dinner, which he did. A few days later, defendant stopped by the house again to see the children. The children wanted to have their father around so plaintiff received her mother's permission to have defendant move in. According to plaintiff, defendant first moved his furniture into the house and later, in January 1980, moved in himself. Plaintiff testified that defendant lived as a boarder. However, she admitted that from 1979 to 1984 she occasionally had sexual relations with defendant.

Plaintiff admitted that defendant contributed $40 per week for household expenses. However, there were periods in which defendant was absent from the home. Plaintiff produced her own notes which recorded the dates of defendant's absences. The notes indicated absences from: April 1980 to July 1980; February 1981 to April 1981; April 1981 to February 1982 (sporadic absences); and February 1982 to October 1982. During some of the absences plaintiff knew where defendant resided, during other absences she did not. Plaintiff tolerated defendant's returns after his absences because she thought it was important for her children to know their father.

Plaintiff admitted that the whole family went on a vacation to Colorado in April 1981. She, her mother, and defendant paid for the trip. When defense counsel reminded plaintiff that according to her notes defendant had been absent in April 1981, plaintiff admitted that her notes might be inaccurate. However, plaintiff insisted that defendant was absent for substantial periods.

Plaintiff testified that defendant did not pay child support while he lived with the family or during any of his absences. In April 1984 defendant moved out permanently and plaintiff did not know where defendant resided thereafter. Defendant did not pay child support at any time after April 1984. However, plaintiff admitted that she did receive some envelopes containing cash from defendant after April 1984. She explained that each envelope also contained a receipt from defendant's union indicating that the cash was for repayment of family medical expenses.

Plaintiff had opened a checking account with a local bank in 1980. Plaintiff testified that any time she deposited money into the account she recorded the source of the money. Sources included paychecks from her employer and loans from both banks and individuals. Plaintiff also received money from defendant while they lived together because defendant did not have a checking account; he cashed his paychecks every Friday and gave the money to her and she deposited the money into her account. Defendant gave plaintiff a total of $17,142. However, plaintiff also kept a record of how she spent the money she deposited into the account. Plaintiff testified that she did not use any of the $17,142 for her or for the children's benefit. Instead, her records indicated that she spent a total of $17,088 on behalf of defendant. For example, she used the money to make payments on defendant's cars and to pay his union dues and credit card bills. However, the records indicated that at least 10 deposits from defendant were made at times when defendant was allegedly absent and some expenditures were made on his behalf after he left in 1984.

In 1985, plaintiff received a $15,000 loan from a bank. Plaintiff testified that the loan was used to pay Denise's college expenses. She did not, however, have any cancelled checks to show that the money was used in this way. She explained it was difficult to find her papers because she had moved so often. Plaintiff told Denise that she would need defendant's help to pay back the school loans. Denise was dependant on plaintiff during her entire time in college including the semester she spent abroad.

Plaintiff owned a Lincoln automobile which was destroyed in an accident in 1979. From 1979 to 1986, plaintiff drove a used Oldsmobile which defendant purchased. In 1986 the Oldsmobile was sold and plaintiff received the proceeds. Defendant and plaintiff together bought an older model (1957) Oldsmobile which was later sold. Plaintiff again received the proceeds ($1,500). Plaintiff denied that defendant sold another one of his cars and then used the proceeds to pay off her $5,000 bank loan.

Plaintiff testified that in 1971 she worked as a waitress, from 1977 to 1981 she owned a restaurant, and from 1982 to 1987 she worked part time as a bartender and waitress. In 1980 her restaurant burned down. She received $55,000 in insurance proceeds. She testified that she used $14,000 of the proceeds to satisfy a bank loan, she gave $2,000 to defendant's parents, and she gave $5,000 to her mother. She used other amounts to pay off personal loans and to pay off one of defendant's car loans. After all of her expenditures, $25,000 remained. She deposited $1,000 into a new checking account with a bank in Evergreen Park. She then hid $24,000 in cash in her home. She testified that no one in the family knew about the hidden $24,000.

Plaintiff denied that she did not file a petition between 1979 and 1988 because defendant was, in fact, paying child support. She denied that she requested defendant to pay child support in cash after he moved out. She denied that she filed the instant petition against defendant because he did not have a checking account and had no records of having made the cash payments for child support after he moved out.

Finally, plaintiff testified that she was currently living in Las Vegas with her mother, her stepfather, and two of her children. She was currently unemployed.

Denise Fritch, one of the children, testified that she applied to the Art Institute of Chicago while a junior in high school, was accepted, and enrolled as a full-time student in September 1984. She did not apply to other schools. She graduated from the Art Institute in May

1988. She was employed during school at a flower shop earning college credits instead of a salary. Her grandmother gave her money for some of her school expenses, and she received other grants and scholarships which did not have to be repaid. However, her indebtedness for college expenses exceeded $29,600. She estimated that her school supplies cost $1,000 per semester for eight semesters. Denise produced the following exhibits as evidence of her outstanding indebtedness: (1) exhibit 6, Illinois guaranteed loans in the total principal amount of $11,500; (2) exhibit 7, Academic Financial Services Association loans in the amount of $1,660; (3) exhibit 8, a Butler loan of $900; and (4) National Direct Student loans of $2,330. Denise acknowledged that she received $8,000 from defendant. Denise knew that defendant obtained the money by cashing an IRA account which she and defendant had opened years earlier. She did not remember additional details about the account other than that she thought she was entitled to the entire amount in the account. She spent $6,000 of the $8,000 during her semester in Europe. The money was spent on miscellaneous expenses; the tuition for the semester in Europe was paid for by her grandfather and by loans. Denise had no documentation for her costs for supplies, her semester in Europe, or for the money she borrowed from individuals. Denise testified she currently lived in Las Vegas and was employed earning $170 per week. The job she left in Chicago paid $275 per week.

After Denise's testimony, defendant moved for a directed verdict on count II concerning the college expenses. The court reserved ruling on the motion.

Defendant testified first as an adverse witness and then again in his case in chief. Because plaintiff's petition requested child support arrearages from 1978 to 1987, plaintiff requested that defendant produce any receipts for child support during that time. Defendant produced carbon copies of currency exchange money order receipts for each week of 1978 totaling $4,167 and for various weeks in 1979 totaling $1,924. All of the individual receipts for 1979 and some for 1978 were in the amount of $74. Although the receipts did not bear plaintiff's signatures indicating that the money orders had been cashed, defendant testified that either he or his parents delivered the money orders to plaintiff. Defendant's parents were employed by the same currency exchange from which the money orders were purchased.

Defendant testified that he moved back in with plaintiff before Thanksgiving in 1979. He had no receipts for child support payments from the fall of 1979 through July 1984 and had no receipts for any

periods subsequent to July 1984. Defendant testified that he made his child support payments during these periods in cash.

Defendant explained from 1980 to 1984 he cashed his weekly paychecks at Dominick's or Jewel, kept $50, and gave the rest to plaintiff. Plaintiff deposited the money into what defendant believed to be a joint checking account. Defendant testified that some of the money was used to pay plaintiff's bills, including $500 for a medical bill, $800 for a gas bill, and $1,200 for an electric bill. At some point he stopped contributing the $40 per week for household expenses but he could not remember the reason. Nonetheless, he continued giving plaintiff his cashed paychecks minus the $50. Plaintiff never asked him for child support from 1980 to 1984.

Defendant admitted that he was absent several times while living with plaintiff: once, for one night; once, for just over a week; and twice, for a couple of weeks. He moved out in 1984. The day he moved out, plaintiff told him she wanted $100 a week in cash, not money orders. Thereafter, he paid her $100 per week in cash, but occasionally missed several weeks. He left her the money in an envelope in her mailbox or left the money with the children. If conditions at work deteriorated, he gave her only $80 to $85. He also reduced the amount when his son, Dennis, moved out of the family home. He admitted that he stopped making payments permanently in March 1987 because plaintiff sold his 1957 Oldsmobile and kept the proceeds. He had no knowledge that plaintiff secretly kept $24,000 in the home.

Defendant produced his tax returns from 1984 to 1987 which indicated that he had been employed earning a gross yearly income ranging from $31,740 to $40,473.

Defendant testified that one of his cars, a Cadillac, was stolen and that he used the $6,000 in insurance proceeds to pay off a $5,000 bank note in plaintiff's name. After plaintiff's Lincoln was destroyed in an accident, he negotiated the purchase of the used Oldsmobile, made some of the payments, and thereafter plaintiff handled the finances. He signed the title over to her after he left the house.

Defendant admitted that he became aware that Denise was a student at the Art Institute in 1983 when she received a grant. He was also aware that Denise graduated in 1988. As to contribution towards Denise's expenses, defendant testified that in 1987 he cashed an IRA account which was in his name and then contributed $8,000 toward Denise's expenses. He opened the account in 1980 with $1,200 of his own money and $800 from Denise. By 1987 the account had matured into $14,000. Defendant withdrew the entire $14,000 and disposed of it as follows: he gave $8,000 to Denise for her college expenses; he

paid $1,400 as a 10% penalty for early withdrawal; he paid $4,000 in taxes; and he kept $2,000. The entire $14,000 appeared on defendant's 1987 tax return as income. Defendant testified that he cashed the IRA account pursuant to Denise's request. He received only one other request, during a 1985 phone call from plaintiff, that he contribute to Denise's college expenses.

Dennis Fritch II, defendant's son, testified that he had been residing with defendant in Tinley Park, Illinois, since 1987. From 1980 to 1984 Dennis lived with plaintiff and defendant at the family house. Defendant was treated like a boarder at the house. Dennis testified that after defendant moved out in April 1984, he did not see defendant. However, Dennis testified that after 1984 he often met defendant on the street corner to pick up envelopes usually containing $80 in cash. The envelopes never contained a check. Dennis then gave the money to plaintiff. Dennis testified that the purpose of the money was to provide child support but he admitted that the money could have been used for medical expenses. In 1985 he retrieved envelopes with cash from the mailbox 30 to 40 times. Plaintiff complained to him if the envelopes were late. He did not see the envelopes regularly in 1986 or after because he had left for college. Defendant gave each child $10 weekly allowance and occasionally gave Dennis money to buy groceries while he lived with the family from 1979 to 1984. On cross-examination, Dennis admitted that he started college in 1985 and not 1986.

Mary Fritch, defendant's mother, testified that she had visited her son's family when he was living with plaintiff. She and her husband occasionally delivered an envelope with money when defendant could not do so. She was unsure whether she delivered any envelopes in 1986.

Raymond Fritch, defendant's father, testified that he delivered envelopes to plaintiff's house after defendant moved out and that the money was intended for child support. He delivered the envelopes on his way to work in the morning six to eight times.

Grace Rothan, plaintiff's mother, testified in rebuttal that defendant lived with his family in her house for a four-year period. She did not think he had ever been absent for more than a year but the shortest absence had been a couple of months. Defendant contributed $40 per week for household expenses. She had no knowledge of any financial dealings between plaintiff and defendant. She was not aware that defendant left any money after he moved out, but she was usually at work from 7 a.m. to 7 p.m. or later. She loaned plaintiff money but she did not know that plaintiff received $55,000 from an insurance

claim or that she kept $24,000 in the house. She never questioned plaintiff if she needed money.

Plaintiff also testified in rebuttal. She denied that her son Dennis had ever given her money for child support in 1984 or 1985. She did not recall defendant's mother or father delivering any payments. She did admit to receiving some envelopes containing cash but claimed the money was used for medical expenses.

Finally, Denise Fritch testified again in rebuttal. She stated she had never picked up any child support money from defendant after he moved out, she was not aware of her brother Dennis having done so, and she was not aware that her grandparents had brought money to the house. Regarding defendant's absences, she stated he left more than three times, the longest absence being a few months and the shortest being four weeks. From 1984 to 1987, she was in school and was gone each weekday and on some Saturdays.

After the completion of the testimony, the attorneys presented their closing arguments. A transcript of these arguments is not in the record.

On December 12, 1988, defendant filed a request for findings of fact. Defendant requested the court to find, in part, that plaintiff's prayer for arrearages for 1978 and 1979 was barred by the doctrines of equitable estoppel and *laches*.

On August 1, 1989, the court held a hearing to make its findings. The court divided the testimony as to count I into three periods and found that defendant owed child support as follows: (1) From April 1978 to January 1980 the court found defendant owed $1,850. After weighing the credibility of the testimony for this period, the court found that defendant paid child support for those weeks accounted for by defendant's currency exchange money order receipts but did not pay the support for those weeks for which the receipts were missing. The court calculated the arrearages accordingly. (2) From January 1980 to April 1984 the court found defendant owed $7,000. The court credited defendant for having paid child support for 30 months, the period in which the court determined defendant lived with the family. The court based the credit on the evidence that defendant contributed $40 per week for household expenses and also gave his cashed paycheck minus $50 to plaintiff. However, the court found defendant did not pay child support during his absences. The court determined this period to be 22 months and calculated the arrearages accordingly. (3) From April 1984 to October 1987 the court found defendant owed $11,080. The court determined that defendant made no support payments after he moved out of the house. The court calculated the ar-

rearages accordingly. However, the court reduced the arrearages for this period by the amount that plaintiff received from the proceeds of the sale of one of the automobiles.

As to count II, the court denied defendant's pending motion for a directed verdict. The court found that Denise had in fact incurred debt for college expenses and that $29,644 remained outstanding. The court initially determined that defendant was liable for $24,000 or, stated otherwise, $6,000 per year for the four years of schooling. The court based this determination on all of the following factors: defendant made child support payments; plaintiff and Denise were unable to "keep the respondent informed as to what these costs were to see if there was a possibility of trying to maintain some kind of lid on the expenses"; and the income of defendant. However, the court credited defendant for having already contributed $7,200 pursuant to the IRA funds ($8,000 minus the $800 that Denise originally invested). Therefore, defendant owed a total amount of $16,800 for Denise's college expenses.

Finally, the court entered a contempt finding against defendant as a means to enforce the payment of the child support arrearages.

The court entered a final order reflecting the above findings on August 21, 1989.

Defendant filed a petition for reconsideration and new trial in which defendant attacked, in part, the finding as to the contribution for Denise's college expenses. Defendant argued that there was no evidence that the college expenses were reasonable; no evidence that the monies Denise received for her expenses were actually paid to the Art Institute; and no evidence that the indebtedness to the Art Institute, if there was one, had not already been satisfied. The court responded that in light of the testimony concerning Denise's education at the Art Institute "the court did have a sufficient basis to enter the judgment that it did." The court denied defendant's petition and continued the matter in light of the contempt finding.

Defendant filed this appeal.

OPINION

■ We first address the trial court's finding of contempt against defendant. Contempt is not a proper means of enforcing payment of child support arrearages where the children have reached their majority. (*Fox v. Fox* (1978), 56 Ill. App. 3d 446, 371 N.E.2d 1254.) Here, defendant's youngest child reached the age of majority before plaintiff filed the instant petition. Therefore, the trial court's finding of contempt against defendant was improper and is reversed.

We next consider whether the trial court's findings of child support arrearages against defendant were against the manifest weight of the evidence. Plaintiff's petition alleged that defendant owed child support from 1978 to 1987. The trial court divided this time into three separate periods based on its determination when defendant did and did not live with his family. Those periods were: (1) April 1978 to January 1980; (2) January 1980 to April 1984; and (3) April 1984 to October 1987. We will analyze the evidence for each period.

■ For the period April 1978 to January 1980 the court found defendant owed $1,850. Here, the court found that defendant paid child support for those weeks accounted for by defendant's currency exchange money order receipts but did not pay the support for those weeks for which the receipts were missing. The court also found that defendant did not move into the house prior to Thanksgiving, 1979, as he claimed. Therefore, defendant appeals the finding for this period to the extent that it did not credit him for the those weeks for which the receipts were missing and to the extent that it did not find that he moved into the house prior to Thanksgiving, 1979. We find no reason to disturb the trial court's finding. Plaintiff and defendant each presented testimony affirming or denying these questions of fact. The court based its finding, not on an insufficiency of evidence, but on the credibility of the testimony presented. It is well established that a credibility determination should be left to the trier of fact because it alone is in the position to see the witnesses, observe their demeanor, and assess the relative credibility of witnesses where there is conflicting testimony on issues of fact. (*In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 500 N.E.2d 612.) Therefore, we will not disturb the court's finding.

■ For the period of January 1980 to April 1984 the court found arrearages totaling $7,000. The court credited defendant for having paid child support except for the periods during which he was absent from the family. The court found that period to be 22 months. Defendant argues that the court's finding of 22 months was based on incompetent, conflicting and insufficient evidence. Although we agree that the evidence of defendant's absences (plaintiff's testimony, her notes, and the testimony of Denise and plaintiff's mother) was sketchy, we do not find that it was insufficient for the court to make its determination. All of this evidence suggested that defendant had been absent for substantial periods. Furthermore, defendant admitted that he was absent for several periods but suggested that his longest absence lasted only a couple of weeks. Again, the court based its finding, not on an insufficiency of evidence, but on the credibility of the evidence

presented. Therefore, we will not disturb the court's finding. *In re Marriage of Kaplan*, 149 Ill. App. 3d 23, 500 N.E.2d 612.

However, even if the court properly determined an absence of 22 weeks, defendant argues that the court erred by not crediting him for having paid support while he was absent. Defendant bases this argument, in part, on the testimony that defendant gave his cashed paychecks amounting to $17,142 to plaintiff for deposit into her checking account. However, plaintiff specifically testified that the cashed paychecks were not used for child support. The money was either spent on medical expenses or on defendant's own behalf. Plaintiff presented her checkbook records in support of this testimony. Again, the court based its finding, not on an insufficiency of evidence, but on the credibility of the evidence presented. Therefore, we will not disturb the court's finding. *In re Marriage of Kaplan*, 149 Ill. App. 3d 23, 500 N.E.2d 612.

■ For the period April 1984 to October 1987 the court found arrearages totaling $11,080. The court found that defendant made no payments during this period but credited defendant with the proceeds of an automobile sale which plaintiff received. Defendant argues in his brief that this finding totally discounted the testimony of the defendant, and the corroborating testimony of his son, Dennis, and his parents, who all affirmed that defendant made weekly support payments in cash pursuant to plaintiff's request. We do not find defendant's argument persuasive. The corroborating testimony of Dennis and of defendant's parents was not particularly persuasive. For example, although Dennis testified that he saw the envelopes with cash through 1986, he did not know if the cash was for repayment of medical expenses. He also admitted on cross-examination that he had left for college in 1985. Furthermore, plaintiff testified that she received no support payments after defendant moved out; and Denise and plaintiff's mother testified that they were not aware that defendant made any payments after he moved out. Again, the court based its finding, not on an insufficiency of evidence, but on the credibility of the evidence presented. Therefore, we will not disturb the court's finding. *In re Marriage of Kaplan*, 149 Ill. App. 3d 23, 500 N.E.2d 612.

■ We next consider whether the trial court's award for college expenses was an abuse of discretion. We note, here, that the court's initial finding of $24,000 in liability amounted to only $6,000 per year for the four years of schooling. We also note that the court then credited defendant with the $7,200 in IRA funds which represented the only contribution that defendant claims to have made. As to the evidentiary basis for the $29,600 in outstanding expenses, both Denise

and plaintiff testified that they obtained loans which were used to pay for Denise's college expenses. Denise authenticated her indebtedness, in part, with the following exhibits: exhibit 6, Illinois guaranteed loans in the total principal amount of $11,500; exhibit 7, Academic Financial Services Association loans in the amount of $1,660; exhibit 8, a Butler loan of $900; and exhibit 9, National Direct Student loans of $2,330. Also, there was no dispute that Denise graduated from the Art Institute. We hold that the trial court did not abuse its discretion in accepting the documentary evidence of the student loans and the testimony of the witnesses to conclude that educational expenses had been incurred, that these expenses needed to be repaid, and that defendant should contribute in the amount the trial court determined.

We next consider whether the trial court erred in finding defendant liable for the college expenses over defendant's objection that he had a right to prior consultation. On this issue, defendant does not contest that the provisions of the marital settlement agreement did not require consultation. Rather, defendant argues that it was implicit in the Agreement that he be consulted as to the expenses for which he would be held liable. We are not persuaded by this argument because defendant testified that he, in fact, knew in advance that Denise had been accepted to the Art Institute. We are also not persuaded that the court's finding amounted to unfairness or hardship to defendant. In defendant's answer to count II of plaintiff's petition he admitted that he had the financial ability to contribute to Denise's college expenses. Defendant's tax returns for the years 1984 to 1987 support this admission.

Although defendant raises several additional arguments concerning his liability for the college expenses, we deem it necessary to address only one. In section 513 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 513), the legislature addressed the issue of court-awarded payments for the education and maintenance of divorced couples' children, whether of minor or majority ages. The section directs the court to consider relevant factors, including the financial resources of both parents, the standard of living the child would have enjoyed had the marriage not been dissolved, and the financial resources of the child. Here, defendant argues that the trial court violated section 513 because the court did not consider the ability of either plaintiff or Denise to contribute to these expenses. We do not agree. The parties entered a marital settlement agreement which did not list as a factor the ability of either plaintiff or Denise to contribute to the college expenses. The terms of the marital settlement agreement prevail and those factors which might have

been relevant under section 513 cannot excuse defendant's duties under the agreement. *In re Marriage of Houston* (1986), 150 Ill. App. 3d 608, 501 N.E.2d 1015.

■ Finally, we consider whether the trial court erred by not barring plaintiff's claims pursuant to the doctrines of equitable estoppel and *laches*. We have analyzed the record and, although defendant raised the doctrines in his request for findings of fact, we can find no indication that defendant raised these doctrines at the hearing on plaintiff's petition, during the hearing in which the court made its findings, or in his petition for reconsideration and new trial. Therefore, defendant waived these arguments. *In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 428 N.E.2d 1005.

In summary, we affirm the trial court's August 21, 1989, final order except to the finding of contempt against defendant which we reverse.

Affirmed in part; reversed in part.

MURRAY and McNULTY, JJ., concur.