2020 IL App (2d) 190634-U
No. 2-19-0634
Order filed June 18, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* ESTATE OF HORST A. PEPPA, Deceased | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| (Deborah Peppa, Petitioner-Appellant v. Royce Peppa, Individually and as nominated Executor under the Will of Horst A. Peppa, dated July 12, 2017; and Stephen Peppa, Respondent-Appellees). | ) ) ) ) ) ) | No. 17-PR-286<br><br>Honorable<br>Michael J. Chmiel,<br>Judge, Presiding. |

_____

JUSTICE Bridges delivered the judgment of the court.
Justices Jorgensen and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's order approving the executor's accounting and closing the estate as insolvent was not against the manifest weight of the evidence.

¶ 2    Two days prior to his death, Horst Peppa executed a Will leaving his entire estate to his wife, Royce Peppa. Horst's children, Debbie Peppa and Stephen Peppa, filed separate will contests. After selling most of the estate's property, Royce then submitted an accounting of the estate pursuant to section 24-1 of the Probate Act of 1975 (Act) (755 ILCS 5/24-1 (West 2018)) and moved to close the account pursuant to section 24-14 of the Act (*id.* § 24-14), claiming the estate was insolvent. Debbie objected, claiming that items were missing from the accounting, and

sought additional discovery. Over Debbie's objections, the trial court approved the accounting and closed the estate. Debbie appeals that order. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      At all relevant times, Horst Peppa's immediate family consisted of his wife, Royce Peppa, and two children from a prior marriage, Debbie Peppa and Stephen Peppa. On June 17, 2017, Horst experienced what he believed to be indigestion and was admitted to the hospital where he was diagnosed with pancreatic cancer. On July 12, 2017, Horst executed a Will leaving his entire estate to Royce. Horst passed away on July 14, 2017. Horst's estate consisted entirely of personal property, including items such as a gold Rolex watch, several firearms, remote controlled model airplanes, and art prints. Following his death, Horst's Will was filed with the McHenry County circuit court on July 24, 2017. After, the Will was admitted to probate, Royce was appointed as executor. Debbie and Stephen subsequently filed separate Will contests on January 17, 2018, and June 13, 2018, respectively. Of primary concern to Debbie and Stephen were certain items of personal property that held sentimental value to them.

¶ 5      On September 18, 2018, the trial court entered an order referring the parties to mediation. Sometime in September 2018, Royce held an estate sale, which was conducted by Paxem, Inc. Royce maintains that apart from the Rolex watch, firearms, and family photographs, all of Horst's personal property was sold at the estate sale, and that after Paxem's commission, the estate received $10,197.52. Royce also maintains that on September 3, 2018, Horst's firearms were sold to a man named Ray Cook for $17,550.00. On October 11, 2018, the trial court vacated its order referring the parties to mediation.

¶ 6      On November 27, 2018, Royce filed an inventory and interim report outlining the estate's assets. On December 18, 2018, the trial court entered an order granting Royce's counsel's petition

for fees through July 31, 2018, in the amount of $33,791.71, terminating independent administration of the estate and requiring that Royce file an updated inventory/report. On January 16, 2019, Royce filed her verified report and accounting. On January 29, 2019, the trial court entered an order granting Royce's prior request for her statutory spousal award. On February 26, 2019, Debbie and Stephen filed their objections to Royce's verified report and accounting. Based on those objections, following a brief hearing on March 19, 2019, the trial court ordered that Royce file an amended accounting providing receipts for any items which were sold for over $1,000. At that same hearing, Royce's counsel represented that he had sales receipts from the Paxem sale in his possession, and that Debbie's and Stephen's counsel were welcome to review them.

¶ 7    On April 4, 2019, Royce filed a verified supplemental accounting in which she identified a lawn tractor and three firearms as being sold for more than $1,000. On May 2, 2019, Debbie filed her objection to Royce's supplemental accounting in which she identified several pieces of artwork owned by Horst which she believed to be worth more than $1,000. In her objection, Debbie also requested that the court compel Royce to provide the receipts from the Paxem sale. On May 14, 2019, Royce filed her "Verified Motion to Distribute Assets, Close Estate, and Discharge Executor Pursuant to 755 ICLS 5/24-7" in which she argued that the estate should be closed because the estate's attorney fees and Royce's spousal award exceeded the value of the estate. On May 22, 2019, a hearing was held in which Royce was examined on the record. She testified that all of Horst's personal property except for the Rolex watch and firearms was sold at the estate sale, and that the only items of personal property which sold for $1,000 were the lawn tractor and one of the firearms. This testimony was unrebutted.

¶ 8    On June 11, 2019, Debbie served a subpoena on Ray Cook. On June 13, 2019, Debbie filed her "Verified Response in Opposition to Executor's Verified Motion to Distribute Assets, Close

Estate, and Discharge Executor Pursuant to 755 ILCS 5/24-7" in which she alleged that Ray Cook, who had been a friend of Horst's, purchased not only Horst's firearms but also his model airplanes. Debbie's verified response also alleged that she had identified an eBay seller who was reselling items from the estate, and she believed that this seller had purchased all of the items sold at the estate sale. She also alleged that this eBay seller's listings did not include all of the items in Horst's estate, and that several pieces of art, Leica camera equipment, and other items were not being sold by the eBay seller, and thus unaccounted for. Debbie did not identify this eBay seller, nor did she indicate any specific items they were selling.

¶ 9     On July 9, 2019, the trial court approved the supplemental accounting showing the estate was insolvent, granted Royce's motion to close the estate, and determined that the motion to compel and other discovery issues were moot. Debbie filed a timely notice of appeal from this order.

¶ 10                          II. ANALYSIS

¶ 11     Debbie maintains that the trial court's decision to close the estate under Section 24-7 of the Probate Act was against the manifest weight of the evidence, as was the trial court's approval of Royce's supplemental accounting. 755 ILCS 5/24-7 (West 2018). Debbie argues that Royce's refusal to turn over the receipts from the estate sale, as well as her motion to quash the subpoena against Ray Cook, call into question the veracity of her supplemental accounting, because if such evidence were exculpatory, there would be no reason not to produce it. Additionally, Debbie maintains that Royce had been demonstrably untruthful in her discovery responses. She argues that, in response to interrogatories, Royce claimed that she had no involvement in the handling of Horst's financial affairs and that there were no financial accounts in his name. However, documents submitted by Horst's estate planning attorney demonstrate that Horst had a 401(k) plan

and that Royce directed the attorney to change the designation on the plan to herself. Debbie maintains that the trial court's reliance on Royce's representations was unreasonable and that the trial court should have discounted her testimony. Finally, Royce never specifically rebutted Debbie's allegations that in Horst's estate there were seven pieces of art and two cameras which would have sold for over $1,000 had they been sold at the estate sale, and which did not appear in the produced receipts of items sold for more than $1,000.

¶ 12    In response, Royce argues that the Probate Act does not prescribe a specific level of detail for accountings. Royce continues that it is up to the trial court to determine what evidence is needed to support an accounting, not an opposing party in litigation, and she complied with the trial court's order that she provide the receipts for those items which sold for over $1,000. Additionally, Royce argues that she rebutted Debbie's assertion regarding the cameras and art prints by testifying that the only remaining items of personal property in the estate were the Rolex watch and family photographs, and that the only items which sold for more than $1,000 were the lawn tractor and three guns. Notably, Royce does not address Debbie's assertion that Royce was dishonest in some of her responses to interrogatories.

¶ 13    A trial court's approval of an executor's accounting will not be disturbed unless it is against the manifest weight of the evidence. *Estate of Vail v. First of America Trust Company*, 309 Ill. App. 3d 435, 442 (1999). "A judgment is against the manifest weight of the evidence only when the findings appear to be unreasonable, arbitrary, or not based on evidence, or when an opposite conclusion is apparent." *Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 23.

¶ 14    "If it appears to the court that the value of the real and personal estate of a decedent after payment of 1st class claims does not exceed the amount of the surviving spouse's or child's award, or both, the court shall order the representative to deliver the personal estate to the person entitled

to the award and discharge the representative." 755 ILCS 5/24-7 (West 2018). For a surviving spouse with no minor children, the minimum award is $20,000. *Id.* at 15-1(a). First class claims include funeral expenses and expenses of administrating the estate. *Id.* at 18-10.

¶ 15    In her motion to close the estate, Royce represented that the estate consisted of $27,747.42 from the proceeds of the estate and gun sales, the Rolex watch appraised at $15,000, and family photographs of zero monetary value, for a gross value of $42,757.42. She further argued that the estate had incurred $33,791.71 in attorney fees, (the $33,791.71 in attorney fees only reflects services rendered through July 31, 2018 which had been approved by the court), leaving a net value of $8,965.71, which was below the $20,000 minimum spousal award.  She did not include certain expenses identified in her inventory and interim report filed on November 27, 2018, including $345 for filing the decedent's final tax return, $466 in tax liability, $84 for the Rolex's safe deposit box, $500 for Paxem's presale fee, $118 in reimbursable mileage, and $5,037.20 for Horst's funeral and cremation, for a total of $6,550.20 in additional expenses. The November 27, 2018 report also stated that the estate had incurred a total of $45,000 in attorney fees up to that point. The trial court granted Royce's motion to close the estate on July 9, 2019.

¶ 16    Debbie's primary contention on appeal is that Royce's representations regarding the estate's assets were not credible.[1] "It is a well established rule that the credibility of witnesses

---

[1] Debbie also seems to suggest that the trial court erred when it approved the accounting and closed the estate without allowing discovery to go forward with regard to obtaining all the sales receipts. However, vague allegations of error without further development are not considered to be properly argued, and as such are forfeited. *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010). Accordingly, we will not consider whether the trial court erred in not permitting further discovery

should be left to the trier of fact because it alone is in the position to see the witnesses, observe their demeanor, and assess the relative credibility of witnesses where there is conflicting testimony on issues of fact." *In re Marriage of Kaplan*, 149 Ill. App. 3d 23, 28, (1986).

¶ 17    We note there are issues with both Debbie and Royce's credibility. Debbie's arguments before the trial court were at times illogical and highly speculative. For instance she asserted that Horst owned two paintings by Guanyu Huang and some Leica camera equipment, none of which she could specifically identify, but which she claims could be worth hundreds of thousands of dollars. Given, that she could not identify any of these items specifically, her assertion that these items could have been worth hundreds of thousands of dollars is highly speculative, especially in light of the value of the rest of the estate.

¶ 18    Debbie also asserted that based on the fact that she had found a seller on eBay (whom she did not identify) selling some of Horst's possessions (which she also did not identify), that seller must have purchased all of the items sold at the estate sale, and because that eBay seller had not listed certain objects for sale they must not have been sold at the estate sale. That argument is simply illogical. It does not follow that because one person purchased some items, they therefore purchased all the items. Nor does it follow that because an item was not listed on that seller's page, that item must not have been sold.

¶ 19    Debbie also alleged that Ray Cook not only purchased firearms from the estate as reported by Royce, but also purchased Horst's model airplanes. However, she never explained why she believed this to be so.

———————————————

before closing the estate.

¶ 20    That being said, Debbie did identify five specific pieces of artwork that Horst owned which she believed were worth more than $1,000 and which had a total value of $22,625. However, it is also not unheard of for items at an estate sale to be sold for pennies on the dollar.

¶ 21    On the other hand, the record also calls into question Royce's credibility. As noted by Debbie, the record shows that Royce misrepresented what role she had in the administration of Horst's 401(k) plan, and Royce has offered no explanation of her conduct. Likewise, Royce's decision to hold the estate sale while the parties were preparing to engage in mediation demonstrates a certain level of bad faith on her part, as does the offer to share the sales receipts with Debbie's and Stephen's counsel and her subsequent withdrawal of that offer.

¶ 22    Because the trial court did not prepare a written ruling, we do not know precisely what evidence was considered in reaching his decision. However, a reviewing court can sustain the decision of the circuit court on any grounds which are called for by the record *Rodriguez v. Sheriff's Merit Commission of Kane County*, 218 Ill. 2d 342, 357 (2006). The trial judge made it clear that he was not entirely satisfied with the accounting, noting that it was "not perfect". As we have stated there are concerns regarding Royce's veracity. However, it is also clear that the estate had accumulated a tremendous amount of attorney fees over the course of this litigation. Based on this and coupled with the spousal award, it was not unreasonable for the trial court to find that the estate was insolvent.  As such, the trial court's judgment was not against the manifest weight of the evidence.

¶ 23                                III. CONCLUSION

¶ 24    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 25    Affirmed.