KATHERINE A. FEDUN, f/k/a Katherine A. Kuczek, Plaintiff-Appellee, v. JAMES E. KUCZEK, Defendant-Appellant.

Fourth District   No. 4—86—0658

Opinion filed May 18, 1987.

Law Offices of James P. Baker, of Springfield (James P. Baker, of counsel), for appellant.

R. E. Dehen, of Springfield, for appellee.

JUSTICE LUND delivered the opinion of the court:

On February 20, 1985, plaintiff filed a petition in the circuit court of Sangamon County requesting increased child support and permission to change the domicile of the child. A hearing was held on April 22, 1985. On June 26, 1986, the court entered an order allowing the plaintiff to relocate and change the domicile of the child, increasing child support, setting visitation rights, and directing defendant to pay an expense for psychological treatment of the child. Defendant appeals alleging (1) the court erred by increasing the child support; (2) the court abused its discretion in adjusting defendant's visitation; and (3) the court abused its discretion in making the obligation of the defendant to pay increased child support retroactive to a period approximately 11 months prior to the date of judgment. We modify and affirm.

Katherine Fedun, formerly Katherine Kuczek, and James Kuczek were married in June 1971 and had one child, John, born in March 1976. Their marriage was dissolved in April 1977. Plaintiff received custody of John. Defendant was ordered to pay $200 per month child support, to pay all medical and dental expenses for the minor, including maintenance of a health insurance policy, to maintain certain life and disability insurance policies in which plaintiff is beneficiary for the benefit of John, and to pay all costs attendant to the minor being educated at a recognized college or university. Both plaintiff and defendant were working as teachers with annual gross incomes of ap-

proximately $10,000 and $12,800, respectively.

An "Amendment to Decree of Divorce" was filed on November 14, 1980. Plaintiff and John were allowed to move to Iowa with plaintiff's new husband. Defendant's visitation was set at six weeks during the summer, one-half of John's Christmas and Easter vacations, and a three-day weekend in October and February. Defendant was responsible for all traveling expenses. Child support was abated during the six-week visitation period.

A hearing on the petition requesting increased child support and permission to change the domicile of the child was held on April 22, 1985. The evidence showed plaintiff remarried in 1980 and left her position as a teacher. Since that time, she has not worked other than as a homemaker, stating she is unable to find a full-time teaching position. She has chosen not to work as a substitute teacher, believing it is financially impractical, nor has she pursued the possibility of another line of work. For the years 1980 through 1984, she and her husband reported adjusted gross incomes of $38,800, $28,400, $45,400, $37,500, and $37,400. Her husband's job required their moving first to Bettendorf, Iowa, and then to Indianapolis, Indiana. He was now being transferred to Columbus, Ohio. The distance from Springfield to Indianapolis is approximately 223 miles and from Springfield to Columbus is between 376 and 400 miles.

She opined that in 1977 the cost of raising John was between $3,000 and $4,000. She presented a budget showing the cost for 1985 was approximately $7,300. She and her husband are able to place, yearly, money in a savings account for John from their income tax refund. This account has a balance between $500 and $1,000. She also invested her teacher's retirement in an annuity with a value of about $6,000. John had to receive psychological services for a stuttering problem which occurred shortly after the divorce for which plaintiff paid $280.

Defendant's annual gross income is now approximately $21,000. His employment responsibilities as a high school teacher and football coach have required a great deal of his time during the summer and make it impossible for him to accept summer employment. His monthly take-home pay is $1,377. He has remarried and has a teenage stepdaughter. The monthly take-home earnings of defendant and his wife are between $1,700 and $1,800. He estimated the monthly family living expenses for 1984 were approximately $1,700.

Defendant paid $506 in premiums for medical insurance. It is anticipated that John will need orthodontic treatment with a cost between $300 and $500 for which defendant is responsible. If the treat-

ment is not successful, more treatment may be required. During 1984, defendant spent in excess of $3,270 on child support, premiums on insurance policies he is required to maintain by the decree, medical and dental expenses, and other miscellaneous expenses for John. This does not include the increased family expenses when John visits during the summer.

On June 26, 1986, the court entered an order which (1) allows the plaintiff and John to move to Ohio; (2) increases child support effective February 20, 1985, to $325 per month with no abatement for the summer six-week visitation; (3) directs defendant to reimburse plaintiff for the psychological services in the amount of $280; and (4) alters visitation to six weeks in the summer and one-half of John's Easter and Christmas vacations with the cost of transportation split evenly by the parties, and alternating Thanksgiving and Labor Day weekend visitation with the cost borne by defendant.

Defendant filed a post-trial motion on July 25, 1986. On September 8, 1986, the court modified its order by making the increased child support effective to July 1, 1985, rather than February 1985. This appeal followed.

First, defendant alleges that the trial court erred by increasing the child support. He notes that previously he paid $200 per month with the support being abated during the six weeks of summer visitation, leaving an effective rate of $175 per month. The new order raised child support to $325 per month, with no abatement, which results in an 85% increase.

Under section 510 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 510), modification of child support may be made only upon a showing of a substantial change in circumstances. When determining whether there is sufficient cause to modify, courts consider both the circumstances of the parents and the circumstances of the child. (*Swanson v. Swanson* (1977), 51 Ill. App. 3d 999, 367 N.E.2d 512; *In re Marriage of Kessler* (1982), 110 Ill. App. 3d 61, 441 N.E.2d 1221.) New or changed conditions are necessary to warrant a change in support payments. (*In re Sharp* (1978), 65 Ill. App. 3d 945, 382 N.E.2d 1279.) The increase in the children's needs must be balanced against the relative ability of the parents to provide for them, and where a change has occurred which creates a substantial imbalance between the child's needs and the parent's support capabilities, modification is required. *In re Marriage of Schmerold* (1980), 88 Ill. App. 3d 348, 410 N.E.2d 629; *In re Sharp* (1978), 65 Ill. App. 3d 945, 382 N.E.2d 1279.

If the threshold question of substantial change is met, the

court, in determining the amount of increase in child support, considers the same factors it considered in formulating the original amount. (*Winter v. Winter* (1978), 69 Ill. App. 3d 359, 387 N.E.2d 695; *In re Marriage of Roth* (1981), 99 Ill. App. 3d 679, 426 N.E.2d 246.) The court is to consider all relevant factors, including:

"(1) [T]he financial resources of the child;

(2) the financial resources and needs of the custodial parent;

(3) the standard of living the child would have enjoyed had the marriage not been dissolved;

(4) the physical and emotional condition of the child, and his educational needs; and

(5) the financial resources and needs of the noncustodial parent or parents." (Ill. Rev. Stat. 1983, ch. 40, par. 505(a); *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296, 483 N.E.2d 1229.)

The modification of child support payments lies within the sound discretion of the trial court and, absent abuse, will not be disturbed on appeal. 108 Ill. 2d 286, 483 N.E.2d 1229.

■ In the current case, the trial court found a substantial change of circumstances had occurred. We agree. At the time of the divorce, defendant's gross income was approximately $12,800. It is now around $21,000. While these increases occurred gradually over the eight-year period, the total increase was about 64%. The increased needs of the child may be presumed from the fact that he has grown older and the cost of living has risen. (*In re Marriage of Kessler* (1982), 110 Ill. App. 3d 61, 441 N.E.2d 1221; *Swanson v. Swanson* (1977), 51 Ill. App. 3d 999, 367 N.E.2d 512.) Also, plaintiff testified the cost of raising John was between $3,000 and $4,000 in 1977. She presented evidence that the cost for 1984 had increased to almost $7,300. While there may be some question concerning some of the amounts, it is sufficient to help show a substantial change of circumstances.

■ Once the court found the change had occurred, the child support was increased from $200 per month, with a six-week abatement during the summer visitation, to $325 per month with no such abatement. We find this to be excessive. At the hearing, defendant presented a schedule which showed his 1984 expenses required by the previous order totaling approximately $3,025. These expenses included child support, medical insurance premiums for John, medicine and dentist expenses for John, and premiums for life and disability insurance policies on himself which have plaintiff as the beneficiary for John's benefit. These expenses do not include the amounts a father

would normally expend on a child out of affection, such as gifts, entertainment, or Little League expenses, nor does it include the expense involved in transporting John for visitation or the increased expenses at home during the six-week summer visitation. The "fixed" expense totaled approximately 19% of defendant's take-home income. There is also the anticipated expense of orthodontic work, in the amount of $500, with possible larger amounts in the future, for which defendant is fully responsible. Defendant also is responsible for John's college expense. An increase in child support to $325 per month, with no abatement, plus the orthodontic work, would push defendant's fixed expense to approximately 32% of his take-home income.

Defendant also has a second family to support. While we are aware the law requires him to support his first family first (*Roqueplot v. Roqueplot* (1980), 88 Ill. App. 3d 59, 410 N.E.2d 441), we cannot be oblivious to the limited amount of income to meet all the needs. In certain cases, "fixed" expense totaling 32% of take-home income would be acceptable, but we must be cognizant of the amount of funds available. One of the relevant factors to be considered is the financial resources and needs of the noncustodial parent. (Ill. Rev. Stat. 1985, ch. 40, par. 505(a)(2)(e); *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 483 N.E.2d 1229.) We believe, considering all the financial responsibilities of defendant for John and defendant's financial circumstances, that this amount is excessive and an abuse of discretion. Therefore, we are adjusting defendant's child support obligation to $300 per month, and this obligation is abated during the six-week period of summer visitation. (87 Ill. 2d R. 366.) This still leaves defendant's "fixed" expenses plus orthodontic expenses at over 28% of his take-home income. He still has expenses for visitation, nonrequired parental expenses, and college expenses.

We are aware plaintiff presented evidence reflecting expenses for John of $7,300 and that our order of support will come to less than 50% of that total. While that evidence was presented, the trial court made no finding as to the expense for John. We note this figure was arrived at by taking the family expenses, such as house payments, utilities, and food, and dividing by the number in the family. This procedure does not result in an accurate figure as to what the child actually required and consumed and has been judicially disapproved. (*Scott v. Scott* (1979), 72 Ill. App. 3d 117, 389 N.E.2d 1271; *Addington v. Addington* (1977), 48 Ill. App. 3d 859, 363 N.E.2d 151.) Further, the fact plaintiff has remarried and she and John now maintain a higher standard of living should not be held against defendant. For example, the fact that plaintiff and John are now able to live in a four-bedroom

home with only four people in the household should not result in the defendant having to pay an excessive amount of child support.

Similarly, the fact plaintiff is able to voluntarily leave the work force and concentrate on raising her children should not be imputed against defendant. The evidence shows plaintiff is able to regularly put money in John's savings account and that she has an annuity valued at $6,000 from cashing in her retirement benefits that she has not had to use. While it is defendant's responsibility to support his son, he should not have to support him beyond defendant's capabilities simply because plaintiff has had good fortune in her new marriage.

■ Defendant next alleges the court erred by modifying the visitation schedule and expenses incurred therefrom. The award of visitation rests within the sound discretion of the trial court and, absent a showing of manifest injustice, will not be disturbed on review. *Gibson v. Barton* (1983), 118 Ill. App. 3d 576, 455 N.E.2d 282; *In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 421 N.E.2d 1308.

In the original decree, defendant was given reasonable visitation. When plaintiff moved to Iowa, the visitation was amended to six weeks during the summer, one-half of John's Christmas and Easter vacations, one three-day weekend in November corresponding to Veterans Day, and one in February corresponding to Lincoln's Birthday. Defendant was solely responsible for the expenses. Defendant testified there were problems with the February weekend because other States do not observe Lincoln's Birthday. He also said that the Easter school vacation period varied from State to State; so, his week off did not necessarily correspond with John's. Also, since plaintiff was moving another 175 miles away (for a total of almost 400 miles), he felt three-day weekend visitation would be difficult.

■ The court modified the visitation to six weeks during the summer, one-half of John's Christmas and Easter vacations, and alternating Thanksgiving and Labor Day weekends. Defendant was responsible for one-half of the transportation expense for the summer, Christmas, and Easter visitations, and all of the expense for the Thanksgiving and Labor Day visitations. We acknowledge this reduces defendant's visitation by eliminating his February weekend. This is compensated somewhat with the inclusion of the Thanksgiving weekend, which is longer than a three-day weekend. However, the trial court made this visitation determination with the best interest of John in mind, and it is well within the broad discretionary authority given the trial court. *Gibson v. Barton* (1983), 118 Ill. App. 3d 576, 455 N.E.2d 282.

■ Finally, defendant alleges it was error for the trial court to

make the increased child support retroactive to July 1, 1985. We note the petition was filed February 20, 1985, and the hearing held on April 22, 1985. However, the court's order increasing child support and making it retroactive to the filing of the petition was not entered until June 26, 1986. Subsequently, the court modified this order making child support retroactive to July 1, 1985.

The question of whether modification of child support should be retroactive to the date of the filing of the petition for modification is in the sound discretion of the trial court. (Ill. Rev. Stat. 1985, ch. 40, par. 510(a); *In re Marriage of Leva* (1983), 125 Ill. App. 3d 55, 460 N.E.2d 1179.) While the record is unclear as to why the court's order was not entered until 14 months after the hearing, and we are aware of the burden to defendant having to pay this accrued increased amount, we do not believe it was an abuse of discretion. Since the amount was properly increased, the plaintiff would be unfairly prejudiced by a delay in entry of the order if it is not made retroactive.

Therefore, we affirm the trial court's order with the exception of the child-support obligation which shall be $300 per month except during the six-week summer visitation when it shall be abated retroactive to July 1, 1985.

Affirmed as modified.

SPITZ, P.J., and KNECHT, J., concur.