THE PEOPLE *ex rel.* SHARON WILLIAMS, Plaintiff-Appellee, v. CHARLES R. WILLIAMS, Defendant-Appellant.

Fourth District   No. 4—89—0247

Opinion filed November 30, 1989.

Ronda D. Taylor Glenn, of Jennings, Novick, Eggan & Ostling, of Bloomington, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, So-

licitor General, and Jan E. Hughes, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

Is the trial court statutorily barred from imposing a retroactive child support obligation upon a respondent in an ongoing child support proceeding who, contrary to the court's specific directive, failed to inform the court of his having resumed employment? We hold that the court is not.

In May 1984, petitioner, Sharon Williams (Sharon), obtained a judgment of dissolution of marriage from respondent, Charles Williams (Charles). In December 1984, pursuant to a marital settlement agreement, the court granted custody of the couple's two minor children to Sharon. At that time, Charles was completely disabled and receiving $564 per month in social security benefits. The court's supplemental order of December 1984 noted that the children were entitled to receive $282 per month from the Social Security Administration due to Charles' disability and that this allowance was to be paid to Sharon for the benefit of the children. The question of further child support was reserved pending a substantial change in the financial circumstances or needs of Charles, Sharon, or the children.

In February 1985, Sharon filed a petition to modify child support, alleging that Charles was employed and earning an income in addition to the social security disability payment. Evidence presented on Sharon's petition revealed that Charles earned approximately $4,000 from December 30, 1984, to April 20, 1985. In May 1985, Charles was ordered to pay as support, in addition to the social security benefits to be received by his children, the sum of $200 per month for a two-month period. Thereafter, support payments were once again to revert to social security benefits to be paid to the children until such time as Charles resumed employment.

In January 1987, Sharon filed a second petition to modify and also a petition for rule to show cause. Sharon alleged that Charles had again resumed employment but had not notified the court. At the same time, the Illinois Department of Public Aid (the Department) filed a petition to intervene and modify the court's order. At the hearing held in February 1987 on these petitions, Charles testified that he had done some part-time work in 1985, and had worked full time from July 1 to October 14, 1985. Charles admitted he failed to notify anyone that he had returned to work. The trial court granted the Department's petition to intervene and also granted the Department's request that Charles be directed to make payments for the 4½ months

in question in 1985. He was directed to make seven $100 monthly payments, with the first payment to be on March 11, 1987, and a $100 payment to be made on the 11th day of each month until the entire $700 was paid. In rendering judgment, the trial court also stated the following:

> "Defendant [Charles] is specifically directed to notify the court within 7 days of resuming any full-time employment. In other words if you go to any sort of full-time employment that you have you have to notify the court about that within 7 days of that taking place. Do you understand that Mr. Williams?
>
> MR. WILLIAMS: Yes."

At the February 1987 hearing, Charles was questioned by counsel for the Department as follows:

> "Q. Mr. Williams, you were present in court back in May, 1985, in this case, is that correct?
>
> A. Yes.
>
> Q. Do you recall the court order that you notify the court when you resumed your employment?
>
> A. Oh yeah.
>
> Q. Do you recall the court indicating that the child support would once again be initiated aside from Social Security payments, once you did inform them?
>
> A. (unintelligible).
>
> Q. Self-support from May 15, 1985, at any point past that date were you fully employed?
>
> A. I've been unemployed on a part-time basis (unintelligible) July 1 (unintelligible).
>
> Q. That is 1985, is that correct?
>
> A. Yes.
>
> Q. Did you notify anyone of that resumption of employment then?
>
> A. No I didn't.
>
> Q. Is there any reason why you didn't do that?
>
> A. (unintelligible)."

In April 1988, Sharon notified the court by letter that she had been informed by Social Security that Charles had resumed work and that the children's social security benefits had been terminated, effective November 1987. In her letter, Sharon stated that she had notified the Department in December 1987 of these events, but she had not as of that time received any information regarding a court date. She asked the court to review her case and to establish a support obligation as of the date Charles resumed employment. Sharon also re-

quested that the child support obligation be made retroactive to the date when Charles began employment.

In response to her letter, the trial court scheduled a hearing for June 1, 1988, and directed the circuit clerk to notify both parties. On April 25, 1988, Charles responded to this notice with a letter, requesting that Sharon's request for a hearing be denied and that all future hearings be heard by another judge. Those requests were denied by a docket entry dated April 28, 1988.

On June 14, 1988, an assistant Attorney General representing the Department filed a petition to intervene and to set support on behalf of Sharon. In October 1988, the court granted that request and conducted a hearing on the Department's petition to set support. At the hearing, Charles claimed that he had contacted the court on August 11 to inform it that he had resumed work, but he had received no response. In response to this testimony, the trial court entered a specific finding that it did not believe that Charles had contacted the court as he had been ordered to when he resumed employment. The trial court further found that Charles had attempted to avoid Sharon's demand for child support.

The evidence also showed that Charles resumed full-time employment in August 1987 and began making child support payments of $200 per month in January 1988. The parties agreed that current child support should be set at $234.39 per month based upon 25% of Charles' net income. The Department, however, argued Charles owed an additional $1,993.71 in child support based on 25% of his net income for the period between August 1, 1987, and September 30, 1988. The trial court agreed with the Department's argument. The court found that 25% of Charles' net income between those dates was $3,192.71 and that after Charles was given credit for $1,200 paid for "partial child support" between those dates, the sum of $1,992.71 still remained. The court accordingly entered judgment in favor of Sharon and against Charles in the sum of $1,992.71 and deemed it a judgment representing "the unpaid child support for the period of August 1, 1987, and September 30, 1988."

Charles argued before the trial court (as he does on appeal) that he cannot be held responsible for any child support payments allegedly accruing prior to October 12, 1988, because no court prior to that date had specifically ordered him to pay any amount of child support. Charles argued that imposing a retroactive child support obligation upon him would be in violation of section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1987, ch. 40, par. 510(a)), which specifically prohibits retroactive modifica-

tion of orders of support. In support of his argument, Charles cites *Ottwell v. Ottwell* (1988), 167 Ill. App. 3d 901, 522 N.E.2d 328, *Conner v. Watkins* (1987), 158 Ill. App. 3d 759, 511 N.E.2d 200, *In re Marriage of Jobe* (1987), 151 Ill. App. 3d 998, 503 N.E.2d 1146, and *Rodgers v. Rodgers* (1983), 118 Ill. App. 3d 334, 454 N.E.2d 1153. We believe each of these cases is factually distinguishable from the present one.

In *Ottwell*, a modification of child support payments was ordered in a hearing conducted solely on the question of whether the respondent was in the indirect civil contempt of court for not complying with the child support order. The salient feature of *Ottwell* is that at the time the modification was ordered, there was no petition before the court to modify the support payments. *Ottwell*, 167 Ill. App. 3d at 908-09, 522 N.E.2d at 332-33.

In the instant case, a petition to modify the order for child support, specifically requesting the court to direct respondent to make support payments, was filed in January 1987. Because Charles did not have full-time employment at the time of the February 1987 hearing on that petition, the court did not enter any child support order at the February hearing in response to the petition to modify the order for child support; instead, the court directed Charles to notify the court within seven days of his resuming full-time employment. Because the record is otherwise silent concerning the court's response to the petition to modify the order for child support, we believe that implicit in the court's order directing Charles to notify the court within seven days of his resuming employment is the court's reserving its ruling on that petition. While the better practice would have been for the court to explicitly reserve its ruling, on this record we think the court's intention is sufficiently clear. As so viewed, the record in this case shows compliance with the requirement of *Ottwell* that "it is necessary that a petition for modification of a divorce decree regarding child support be filed to invoke subject matter jurisdiction." *Ottwell*, 167 Ill. App. 3d at 908, 522 N.E.2d at 332.

In *Conner*, the parties were divorced in October 1972, and the question of the custody of their children was reserved due to the children's involvement in proceedings under the juvenile court act. No reference was made in the divorce decree to the issue of child support. In December 1973, the children's mother obtained custody of the children and moved out of State with them and her new husband. In April 1986, she petitioned the circuit court for an award of current child support and also for reimbursement of support she and her present husband provided to the children while they were in her cus-

tody. The trial court denied her request for reimbursement, and this court affirmed on appeal, citing section 510(a) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 510(a)). *Conner*, 158 Ill. App. 3d at 760-61, 511 N.E.2d at 201.

We note that in the present case there was a petition for modification that was pending at all pertinent times. While it is true that a modified support order pursuant to that petition was not entered, the failure of the court to enter such an order was due to the wilful violation by Charles of the court's order requiring him to inform the court when he obtained full-time employment.

In *Jobe*, the trial court in May 1986 retroactively reduced respondent's child support obligation by terminating child support for an eight-month period (September 1984 to April 1985) in which the respondent had been disabled. No petition had been filed in 1984 seeking modification of respondent's child support payments. Citing section 510(a) of the Act (Ill. Rev. Stat. 1983, ch. 40, par. 510(a)), this court reversed the trial court and held that "past due child-support payments are a vested right, and reduction relating to a period of time prior to the filing of the petition or motion for modification is error." *Jobe*, 151 Ill. App. 3d at 999, 503 N.E.2d at 1147.

In the instant case, however, we are not dealing with any "vested right" of Charles *not* to have a child support obligation imposed. As a further distinguishing factor, a petition to modify child support and to impose a child support obligation upon Charles had been heard by the court and reserved, pending notification by Charles of his having obtained full-time employment.

In *Rodgers*, the respondent's child support obligation was suspended in May 1977 because of personal injuries he suffered in an automobile accident, resulting in the loss of his job. The order suspending child support payments required respondent to notify the court and plaintiff's counsel when respondent returned to work. In a letter dated September 13, 1977, and filed in the circuit court on September 27, 1977, respondent's attorney notified the court that respondent was returning to work. A copy of the letter was addressed to plaintiff's counsel. Despite this notification, for about five years plaintiff did not file a petition seeking the reimposition of a child support order. Even though plaintiff failed to take the necessary steps to modify the support order by having it reinstated, plaintiff sought to have the circuit court award retroactive child support on equitable grounds. The circuit court did so, but on appeal the appellate court vacated that judgment, finding no compliance with section 511 of the Act (Ill. Rev. Stat. 1981, ch. 40, par. 511). *Rodgers*, 118 Ill. App. 3d at 335-36,

454 N.E.2d at 1153-54.

In the present case, however, Charles directly disregarded the trial court's order to inform the court of Charles' having resumed full-time employment.

■■ ■ For purposes of the issue before us, we define the phrase "an ongoing child support proceeding" as a situation in which a court, having jurisdiction of the parties, (1) has before it a petition to either set or modify child support payments; (2) no specific child support order is entered because the respondent, for whatever reason, is viewed by the court as being temporarily without funds to make child support payments; and (3) the court reserves the issue and directs the respondent to notify the court when respondent is able to obtain employment. This definition also includes a situation in which (1) a respondent against whom a child support order has been entered (2) has the order suspended at his request because of a change in his employment circumstances, and (3) the court directs respondent to inform the court when respondent has obtained employment. As so defined, we hold that a circuit court is not statutorily barred from imposing a retroactive child support obligation upon a respondent in an ongoing child support proceeding who, contrary to the court's directive, has failed to inform the court of his having resumed employment.

■■ We believe this holding to be consistent with the requirements of section 510 of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 510) as well as section 102 of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 102), which directs that the Act shall be liberally construed and applied to promote its underlying purposes. Two of these stated purposes are to "make reasonable provision for spouses and minor children during and after litigation" and to "secure the maximum involvement and cooperation of both parents regarding the physical, mental, moral and emotional well-being of the children during and after the litigation." (Ill. Rev. Stat. 1987, ch. 40, pars. 102(5), (7).) We think it absurd to believe the legislature intended to permit someone such as Charles to disregard direct court orders and thereby to escape his familial obligations.

If Charles' position on appeal were correct, then the only remedy available to the trial court to ensure that Charles not disregard his child support obligation would be to require Charles to appear in court on some regular basis, such as weekly, to report on his progress in obtaining employment. While we believe a trial court in its discretion may appropriately take that action, we are not prepared to require *every* circuit court to do so. The expense, the inconvenience, and the waste of judicial resources which would result from our imposing

such a requirement are unacceptable. Given today's crowded court dockets, the imposition of such a requirement might literally bring efforts to enforce child support obligations to a complete halt. An entirely appropriate alternative is what the trial court utilized in this case: placing a direct affirmative duty upon the respondent to notify the court in whatever fashion the court directs that respondent has obtained employment.

Accordingly, we affirm the judgment of the circuit court.

Affirmed.

LUND and GREEN, JJ., concur.