NO. 4-05-0782     Filed: 8/23/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS <u>ex rel.</u> CANDICE GREENE, Petitioner-Appellant, v. ROBERT YOUNG, Respondent-Appellee. | ) Appeal from<br>) Circuit Court of<br>) Adams County<br>) No. 84F134<br>)<br>)<br>) Honorable<br>) Scott H. Walden,<br>) Judge Presiding. |

_____

_____

JUSTICE KNECHT delivered the opinion of the court:

On August 10, 2005, the trial court granted respondent Robert Young's motion to dismiss petitioner Candice Green's "amended complaint for modification of child support and determination of past[-]due child support and imposition of sanctions." Candice sought to retroactively modify Robert's child-support obligation, collect arrearages, and hold him in contempt. Candice appeals, and we reverse and remand with directions.

I. BACKGROUND

On August 14, 1984, Candice filed a complaint alleging Robert Young fathered a child born to her out of wedlock on January 11, 1983, and asking that Robert be ordered to pay child support. On October 11, 1984, Robert appeared and admitted paternity. The cause was continued to November 15, 1984, for a hearing to determine the amount of child support. On November 15, 1984, the trial court ordered Robert to

pay $20-per-week child support and set the cause for review on December 20, 1984.

For the period between November 15, 1984, and July 1989, roughly 20 entries appear in the record ordering defendant to appear in the trial court so the court could review his employment status, child-support payments, and any child-support arrearage. Robert failed to appear at six of these hearings. We describe these proceedings only as necessary to understand the issues in this case.

On January 24, 1985, the trial court "temporarily suspended" Robert's child-support obligation because he had no income. On March 14, 1985, the court continued the "suspension" of child-support payments as Robert was still unemployed.

On June 18, 1987, the Illinois Attorney General (AG) filed a petition to intervene on behalf of the Illinois Department of Public Aid (IDPA). On July 8, 1987, the trial court allowed the petition.

On October 1, 1987, the trial court entered an order stating defendant was $2,287 in arrears in child-support payments. Also on that date, the court entered a withholding order requiring Robert to pay $20 per week for current support and $4 per week toward his child-support delinquency.

At a January 21, 1988, hearing, the trial court found Robert had been employed by the State of Illinois but was now unemployed. Robert received $200 every two weeks in unemployment benefits and was still making child-support payments. The court then reduced Robert's support obligation to $10 per week.

On March 17, 1988, the trial court found Robert "paid $80 on [March 17, 1988,] and is current." The court noted Robert still received unemployment benefits and continued the cause until May 26, 1988, "for review of employment [and] income

status."  The payments were "to continue as previously ordered."

At the May 26, 1988, the trial court found defendant was $200 in arrears for both Candice's and Una Williamson's cases.  (Robert was involved in two paternity actions at the same time.  Candice's and Una's actions followed a similar track and often included identical orders.  Una's action is not related to Candice's appeal.)  The court's order was preprinted and stated "Respondent shall pay $ 'Abated' per __ for child support."  The word "abated" was handwritten on a blank line.  The order did not indicate payments were to accrue during the abatement.  The order also stated Robert "shall give written notice to the [IDPA] immediately upon obtaining or changing employment."  The cause was continued until August 18, 1988, when defendant would be required "to present proof of applications for employment."

At the August 18, 1988, hearing, the trial court ordered Robert to appear at a September 22, 1988, hearing for review of his employment status, again requiring defendant to present a log of prospective employers to whom he had applied.  On September 22, 1988, the court found defendant to have income of $65 per week.  The cause was continued to November 17, 1988, for "[a]rrearages to be set at that time.  Respondent to appear and review job status."  Robert failed to appear at the November 17, 1988, hearing, and the trial court entered a body-attachment order.

On March 15, 1989, the AG filed a petition for rule to show cause.  The petition alleged the trial court entered an order on October 1, 1987, requiring Robert to pay $20 per week to Candice as child support.  The petition further alleged Robert "has willfully and contemptuously failed to comply with the order and is in arrears $140 as of [May 12, 1988]."  The record contains no indication the AG ever set the petition for

hearing.

On July 6, 1989, the AG filed a motion to vacate the body attachment previously issued in this case. Later that day, the trial court entered an order vacating the body attachment and placing the cause on the inactive docket.

No orders or pleadings were entered in the case until June 10, 2004, when Candice filed a "motion for judgment of arrears, income withholding[,] and change of payee" and a "motion for contempt-show cause and request for bond." On December 14, 2004, Robert filed a motion for summary judgment. The trial court granted Robert's motion on February 24, 2005, but granted Candice 21 days to file other pleadings.

On March 17, 2005, Candice filed a "complaint for modification of child support, determination of past-due child support[,] and imposition of sanctions." Robert filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-615 (West 2004)). On April 14, 2005, the trial court granted Robert's motion to dismiss but gave Candice 14 days to file an amended complaint.

On April 28, 2005, Candice filed her three-count amended complaint. Count I was entitled "contempt." Count I requested the trial court to find Robert became employed after May 26, 1988, and failed and refused to pay the $2,287 arrearage ordered on October 1, 1987. It alleged the arrearage plus interest would total $5,906.18 as of May 1, 2005. Candice asked the court to enter an order finding Robert in contempt and ordering him to purge himself of contempt or that he be incarcerated until the contempt is purged. Candice also asserted the May 26, 1988, order was a void order.

Count II, labeled "modification of child support," asked the trial court to

˘ 4 ˘

modify the child-support order to reflect Robert's actual income from May 26, 1988, until January 11, 2001 (the date the parties' child reached majority). Count II also asked that (1) the modification be retroactive to Robert's initial refusal to comply with the May 26, 1988, order by reporting his employment and (2) the arrearage be calculated with interest.

Count III sought the imposition of sanctions. Count III requested the trial court to impose sanctions on Robert for failing to pay the arrearage the court found he owed in its October 1, 1987, order and for failing to report his employment. Count III further asked that Robert be required to post a bond in the minimum amount of $34,510.19 (calculated using the $20-per-week amount the court set on October 1, 1987, plus interest) or in such an amount as could appropriately be calculated at the rate of support that would have been paid had Robert properly reported his employment as required by the May 26, 1988, order.

On May 5, 2005, Robert filed a motion to dismiss pursuant to section 2-619 of the Civil Code (735 ILCS 5/2-619 (West 2004)). On August 10, 2005, the trial court granted Robert's motion to dismiss.

In reference to count I of the amended complaint, the trial court stated the amended complaint sought to have Robert found in contempt for failing to pay a support arrearage computed at $20 per week and for failing to notify the IDPA of a change in his employment status. The court held "a contempt proceeding is not a proper means for collecting a child[-]support arrearage after the child has reached majority." Moreover, the court said child support "was abated in this case as of May 26, 1988." Nothing in the May 26, 1988, order suggested that support would continue to accrue, and such an

order would have been invalid pursuant to Coons v. Wilder, 93 Ill. App. 3d 127, 416 N.E.2d 785 (1981) (Second District).  Further, the court stated Robert was not required to pay child support after May 26, 1988, and "therefore there is no support arrearage for any period after May 26, 1988."  Finally, the court said the May 26, 1988, order was not a void order as Candice alleged.

As to count II, the trial court found the following.  Count II of the amended complaint sought to modify the amount of child support for the period of May 26, 1988, to January 11, 2001.  No case law or statutory authority supports granting the relief Candice requested given almost 15 years passed from when the court placed the case on the inactive docket to Candice's June 2004 filing, 3 years after the parties' child reached the age of majority.  The court held support terminated at the age of majority and could not be amended absent pleadings filed prior to the minor reaching the age of majority.  The court also discussed Candice's prayer for sanctions for Robert's alleged failure to notify the IDPA of a change in his employment status.  The court found this to be an attempt to accomplish a postmajority modification of child support through contempt.  The court opined if the "action had been brought prior to the child attaining majority, it may be that a failure to report a change of employment could have provided an avenue for modifying support retroactively."  The court then noted no such action was brought until more than three years after the child reached majority.

This appeal followed.

The record contains the affidavit of James L. Durham, president and founder of National Child Support (NCS), filed October 26, 2005, that is, after the date the trial court ruled herein.  Durham's affidavit states NCS verified that Robert had

worked for Burlington Northern Railroad since December 1, 1993, as a brakeman earning a salary of $41,710 annually. However, as this affidavit was not filed until after the notice of appeal, the trial court never considered it, and we cannot consider the affidavit in making our decision. See Doyle Plumbing & Heating Co. v. Board of Education, Quincy Public School District No. 172, 291 Ill. App. 3d 221, 229-30, 683 N.E.2d 530, 536 (1997) ("The general rule is that 'material which was not part of the court record or considered by the trial court is not part of the record on appeal and should not be considered by the appellate court.' Smith v. First National Bank, 254 Ill. App. 3d 251, 258, 624 N.E.2d 899, 905 (1993)").

## II. ANALYSIS

Candice raises three issues on appeal: (1) "[w]hether the [trial] court's holding, that an order entered May 26, 1988, at a time when there was no statutory or case authority authorizing abatement of child support, can permanently cease an obligation to pay child support"; (2) whether Robert should be allowed to benefit from his failure to obey the court's order to appear and review his job status; and (3) whether sanctions are appropriately imposed for a failure to appear and report income.

We also address Candice's claim in her amended complaint, not discussed extensively in her briefs, that she is entitled to collect the arrearage the court found Robert owed in its October 1, 1987, order.

### A. Standard of Review

We review a trial court's decision to dismiss a cause of action pursuant to section 2-619 of the Civil Code (735 ILCS 5/2-619 (West 2004)) de novo. Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill. 2d 112, 116, 619 N.E.2d 732, 735

˘ 7 ˘

(1993). In reviewing a section 2-619 dismissal, "a court determines the legal sufficiency of a complaint by taking as true all well-pleaded facts and construing all reasonable inferences from those facts in favor of the plaintiff." Reyes v. Walker, 358 Ill. App. 3d 1122, 1124, 833 N.E.2d 379, 381 (2005).

### B. Order Abating Child Support

Robert argues the May 1988 order abated support permanently. Candice argues no case authority supports abating support. In the alternative, she claims Supreme Court Rule 296(f) (134 Ill. 2d R. 296(f) (effective February 1, 1989) only allows a trial court to temporarily reduce or abate support for up to six months, with the understanding that support due will continue to accrue. Thus, if the court possessed the authority to abate Robert's support obligation, such abatement could have been temporary.

Candice claims Coons stands for the proposition that the trial court had no authority to temporarily abate a portion of a support order, even when the supporting parent is without the present means to pay. We find Coons inapposite. The issue in Coons was whether a court could order child-support payments to accrue during a period that child support was abated.

At the outset, we note courts have long possessed the authority to abate support under certain circumstances, even prior to Rule 296(f) being adopted. See Glass v. Peitchel, 42 Ill. App. 3d 240, 243, 355 N.E.2d 750, 754 (1976) (abated child support when the defendant was discharged from employment and he had no other income); In re Marriage of Ebert, 81 Ill. App. 3d 44, 46-47, 400 N.E.2d 995, 997 (1980)

(unless good faith shown, voluntary termination of employment not considered a material change in circumstances warranting abatement or modification of child support); Fedun v. Kuczek, 155 Ill. App. 3d 798, 803, 508 N.E.2d 531, 535 (1987) (payments abated during child's six-week summer-visitation period with obligor).  In Coons, the trial court abated half of respondent's $280 monthly support obligation from December 1977 until January 1, 1980, at which time the support obligation would resume at 1.5 times the original $280 payment until all abated payments were made up.  Coons, 93 Ill. App. 3d at 130, 416 N.E.2d at 789.  The appellate court stated "[w]e find no authority in the Act *** for the proviso ordered by the court that the $140 balance of the original support order would only temporarily abate and would continue to accrue as an eventual obligation to be paid."  Coons, 93 Ill. App. 3d at 134, 416 N.E.2d at 792.  This is because the dissolution statute is geared toward a present ability to pay support and does not suggest the possible future financial resources of a party may be taken into account.  Coons, 93 Ill. App. 3d at 134, 416 N.E.2d at 792.  We conclude Candice reads Coons too broadly.  It does not stand for the proposition support may never be abated; rather, it says payments cannot accrue while the support obligation is abated.  This is consistent with the cited cases where the appellate court discussed abatement without opposition.  While those cases did not discuss the accrual of support during "abatement," they suggest trial courts abated support under the right circumstances.

On February 1, 1989, our supreme court adopted Rule 296, entitled "Enforcement of Order for Support."  Rule 296(f) governs a petition for abatement and states the following:

"Upon written petition of the obligor, and after due

notice to obligee (and the Department of Public Aid, if the obligee is receiving public aid), and upon hearing by the court, <u>the court may temporarily reduce or totally abate the payments of support, subject to the understanding that those payments will continue to accrue as they come due, to be paid at a later time</u>. The reduction or abatement may not exceed a period of six months except that, upon further written petition of the obligor, notice to the obligee, and hearing, the reduction or abatement may be continued for an additional period not to exceed six months." (Emphasis added.) 134 Ill. 2d R. 296(f).

The committee comments to Rule 296(f) state:

"This paragraph applies only to the short-term inability of the obligor to pay support due to a temporary layoff from employment or other factors. It recognizes that obligors often become temporarily unemployed, rendering them unable to meet their support obligations. This provision is short of a written modification of the Order for Support. It allows the obligor to petition the court, prior to the filing of a petition for adjudication of contempt, for an opportunity to repay those amounts in small increments after employment is regained.

This rule is contrary to the holding of the appellate

ˇ 10 ˇ

court in <u>Coons v. Wilder</u> (1981), 93 Ill. App. 3d 127, [416 N.E.2d 785,] in which the court stated, 'We find no statutory or case authority for the trial court to temporarily abate that portion of a support order the supporting parent is without means to presently pay ***.' [<u>Coons</u>,] 93 Ill. App. 3d at 135[, 416 N.E.2d at 792].

The obligor has the option of filing for a modification of the Order for Support under section 510 of the Illinois Marriage and Dissolution of Marriage Act [(Dissolution Act)] (Ill. Rev. Stat. 1987, ch. 40, par. 510) [(now 750 ILCS 5/510 (West 2004)]. If a court may modify an Order for Support under section 510 of the Act, it follows that it may also temporarily abate the Order for Support, subject to accrual, during a period of temporary unemployment of the obligor." 134 Ill. 2d R. 296(f), Committee Comments, at 225-26.

Rule 296(f) makes it clear abatement was only meant to be temporary. However, Rule 296(f) was not in effect on May 26, 1988, when the trial court entered its order abating Robert's child support. Thus, the abatement between May 26, 1988, and February 1, 1989 (the day Rule 296(f) became effective), was proper, and pursuant to <u>Coons</u>, no payments accrued. After Rule 296(f) became effective, the temporary abatement of Robert's support obligation could last up to six months, or until August 1, 1989 (unless Robert filed a petition to extend it another six months, which he did not do because the order was never changed to comply with Rule 296(f)) and payments would

continue to accrue.

## C. Robert's Obligation To Report Change In Employment Status and Effect of His Failure To Do So

Since we have concluded the abatement of Robert's support obligation could only be temporary once Rule 296(f) came into effect, we must now discuss the effect of Robert's failure to comply with the trial court's May 1988 order, which imposed an obligation on Robert to report any change in his employment status.  When the court entered the May 1988 order, the Non-Support of Spouse and Children Act (Ill. Rev. Stat. 1987, ch. 40, pars. 1101 through 1114) showed a public policy that child-support obligors support their children in accordance with their ability to pay.  See Ill. Rev. Stat. 1987, ch. 40, par. 1107.1(I)(4) (obligor whose payments are withheld or who has been served a notice of delinquency has duty to notify obligee and the clerk of the circuit court of any new employer within seven days) (later codified at 750 ILCS 15/4.1(I)(4) (West 1992)).  Section 1.1 of the Parentage Act of 1984 (Parentage Act) (Ill. Rev. Stat. 1987, ch. 40, pars. 2501 through 2526 (recodified at 750 ILCS 45/1 through 26 (West 1992))) states "Illinois recognizes the right of every child to the physical, mental, emotional[,] and monetary support of his or her parents under this Act."  Ill. Rev. Stat. 1987, ch. 40, par. 2501.1.  Further, section 15 of the Parentage Act states, in pertinent part, that "[f]ailure to comply with any order of the court shall be punishable as contempt."  Ill. Rev. Stat. 1987, ch. 40, par. 2515(b).  In 1999, the Non-Support of Spouse and Children Act was repealed and recodified by the Non-Support Punishment Act (750 ILCS 16/1 through 999 (West 2000)).  Section 20(f) of the Non-Support Punishment Act further supports our view of the public policy of requiring parents to

support their children.  In fact, as stated below, under section 20(f) of the Non-Support Punishment Act, Robert's actions would have constituted indirect criminal contempt had that section been in effect earlier.

Section 20(f) of the Non-Support Punishment Act (750 ILCS 16/20(f) (West 2004)) states the following, in pertinent part:

"An order for support entered under this [s]ection shall include a provision requiring the obligor to report to the obligee and to the clerk of the court within 10 days each time the obligor obtains new employment, and each time the obligor's employment is terminated for any reason.  The report shall be in writing and shall, in the case of new employment, include the name and address of the new employer.

Failure to report new employment or the termination of current employment, if coupled with nonpayment of support for a period in excess of 60 days, is indirect criminal contempt."

The May 1988 order required Robert to report any change in employment. As stated, Candice alleged Robert became employed but did not report his change in employment.

We find it important that it was not Candice's responsibility to continuously bring Robert into court to check on his employment status.  To require her to do so would have been inconvenient, expensive, and waste of judicial resources.  People ex

rel. Williams v. Williams, 191 Ill. App. 3d 311, 317-18, 547 N.E.2d 727, 732 (1989). Moreover, it would have been unreasonable, especially considering approximately 20 hearings to review Robert's employment status had already been held, with none of the hearings resulting in Robert being ordered to pay adequate support as he was constantly either unemployed or underemployed.

Both Illinois' public policy and the May 1988 order put the onus on Robert to report a change in his employment status so that he would be required to support his child. Candice alleged Robert failed to report the change in his employment status upon gaining employment. If true, Robert directly disregarded the court's May 1988 order and violated the public policy of this state. We conclude that under these circumstances, a "circuit court is not statutorily barred from imposing a retroactive child[-] support obligation upon a respondent in an ongoing child[-]support proceeding who, contrary to the court's directive, has failed to inform the court of his having resumed employment." Williams, 191 Ill. App. 3d at 317, 547 N.E.2d at 731.

We recognize that under normal circumstances "[s]upport may be modified only as to installments accruing after the nonmoving party has been notified that a motion to modify has been filed and only upon a showing of a substantial change in circumstances" (In re Marriage of Zukausky, 244 Ill. App. 3d 614, 618, 613 N.E.2d 394, 398 (1993), citing Ill. Rev. Stat. 1991, ch. 40, par. 510(a)). However, the facts of this case are extraordinary. As stated, a circuit court may impose a retroactive child-support obligation upon a respondent in an ongoing child-support proceeding when a respondent has failed to inform the court of his having resumed employment as required by court order. Williams, 191 Ill. App. 3d at 317, 547 N.E.2d at 731. While Williams

involved a petition to modify that was filed before the child reached majority, we see no reason why the Williams rationale should not apply to the unique facts in this case, especially in light of Robert's willful defiance of the May 1988 order requiring him to report a change in his income, his failure to appear in court when required by the May 1988 order, and the fact that his failure to report new employment is criminal under section 20(f) of the Non-Support Punishment Act (750 ILCS 16/20(f) (West 2004)). The court had reviewed Robert's employment status many times, none of which resulted in Robert contributing his fair share of the financial costs expended in raising his child. Candice could not be expected to continuously bring Robert into court for a review of his employment status when Robert was under a duty to inform of any change in that status. The fact Robert never did so inform her should not bar her from getting the support owed her; nor should it allow Robert to escape responsibility for providing such support for his child.

We note Robert argues contempt is not a proper means of enforcing child-support payments where the child has reached the age of majority. See Fritch v. Fritch, 224 Ill. App. 3d 29, 39, 586 N.E.2d 427, 434 (1991). We stress that although we cite section 15 of the Parentage Act of 1984 and section 20(f) of the Non-Support Punishment Act as support for our public policy argument, our decision is not based on the fact Robert's actions constituted contempt under those sections. Rather, our decision is based on our conclusion that it would be "absurd to believe the legislature intended to permit someone such as [Robert] to disregard direct court orders and thereby to escape his" duty to support his child. Williams, 191 Ill. App. 3d at 317, 547 N.E.2d at 731-32.

Our research has led us to no cases with facts similar to those present here. However, we find support for our holding in the public policy of this state in regard to a parent's duty to support his children and the fact Robert directly disregarded a court order requiring him to report any change in his employment status.

## D. Arrearages Prior To Abatement

Candice's amended complaint further alleged Robert failed to pay the $2,287 arrearage the trial court found he owed as of October 1, 1987. Candice claimed Robert owed $5,906.18 (including interest) as of May 1, 2005. The record does not indicate whether Robert ever paid this arrearage.

"Although section 510[(d)] of the [Dissolution] Act provides that the obligation to pay child support generally terminates upon emancipation, this does not mean that after emancipation the custodial parent is not entitled to child[-] support arrearages." In re Marriage of Homan, 126 Ill. App. 3d 133, 135, 466 N.E.2d 1289, 1290-91 (1984). "Past[-]due child[-] support payments are vested rights, and the custodian of the children does not lose her right to collect the arrearage in support." In re Marriage of Williams, 115 Ill. App. 3d 55, 57, 450 N.E.2d 34, 35 (1983). Further, Candice could bring her action to collect arrearages that accrued during the child's minority after the child reached majority. Dorsey v. Dorsey, 86 Ill. App. 3d 1043, 1045, 408 N.E.2d 502, 504 (1980). Thus, the trial court erred in dismissing the portion of Candice's complaint asking that Robert be ordered to pay the arrearage the trial court found Robert owed before the court abated Robert's child-support obligation.

## III. CONCLUSION

For the reasons stated, we reverse and remand with directions for the trial

˘ 16 ˘

court to determine when Robert became employed and establish an amount of child support he would have paid had he complied with the court's May 1988 order. James Durham's affidavit may be presented along with other evidence in further proceedings. The court shall also determine any arrearage owed because of the temporary abatement as a result of the supreme court adopting Rule 296(f). Further, the court shall determine if Robert owes an arrearage from the October 1987 order and, if the trial court answers in the affirmative, the court shall determine the amount of the arrearage. We direct the clerk of this court to notify the AG and IDPA of this ruling. The IDPA may be a necessary party to these proceedings to the extent that public monies afforded support, as opposed to the custodial parent's monies. See 305 ILCS 5/10-1 (West 2004) (a person having custody of a child who accepts financial aid under articles III, IV, V, and VII of the Illinois Public Aid Code is deemed to have assigned to the IDPA any right, title, and interest in any support obligation up to the amount provided. The rights assigned to the IDPA constitute an obligation owed by the person responsible for providing the child support).

Reversed and remanded with directions.

APPLETON, J., concurs.

TURNER, P.J., specially concurs in part and dissents in part.


PRESIDING JUSTICE TURNER, specially concurring in part and dissenting in part:

In this case, I concur with the majority's decision to reverse and remand with directions for the trial court to determine if Robert owes an arrearage from the

October 1987 order. In all other respects, I would affirm the court's order and respectfully dissent.

Candice argues the trial court's order abating support was contrary to case law, specifically Coons. I disagree. As the majority notes, courts have long possessed the authority to abate support under certain circumstances, even prior to Rule 296(f) being adopted.

Candice next argues Rule 296(f) makes it clear abatement is only temporary. While I agree with this proposition, Rule 296(f) was not in effect when the trial court entered its May 26, 1988, order, and Candice did not take any steps to bring the new rule to the court's attention after it came into effect.

This court discussed applying supreme court rules retroactively in People ex rel. Madigan v. Petco Petroleum Corp., 363 Ill. App. 3d 613, 620-21, 841 N.E.2d 1065, 1071 (2006):

> "In People v. Atkins, 217 Ill. 2d 66, 71-73[, 838 N.E.2d 943, 946-48] (2005), the supreme court addressed the retroactivity of legislative amendments. The court held that when the legislature has not indicated whether an amendment should be applied retroactively, in accordance with section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2004)), procedural changes to statutes may be applied retro- actively, while substantive changes may not. Atkins, 217 Ill. 2d at 71[, 838 N.E.2d at 946-47. Although Atkins addressed legislative amendments, its holding applies equally to

supreme court rules.  See generally <u>People v. Roberts</u>, 214

Ill. 2d 106, 116, 824 N.E.2d 250, 256 (2005) ('The rules of

statutory construction also apply to interpretation of ***

supreme court rules')."

In adopting Rule 296(f), the supreme court did not indicate whether the rule should be applied retroactively.

"Thus, in accordance with section 4 of the Statute of Statutes

(5 ILCS 70/4 (West 2004)), we must determine whether the

changes are substantive or procedural.  In <u>Rivard v. Chicago</u>

<u>Fire Fighters Union, Local No. 2</u>, 122 Ill. 2d 303, 310-11, 522

N.E.2d 1195, 1199 (1988), the supreme court explained the

difference between a substantive amendment and a

procedural one:

'In general, procedural law is "'[t]hat

which prescribes the method of enforcing rights

or obtaining redress for their invasion;

machinery for carrying on a suit.'"  [Citation.]

Substantive law, in contrast, establishes the

rights whose invasion may be redressed

through a particular procedure.  More spe-

cifically, procedure embraces "pleading,

evidence[,] and practice.  Practice means

those legal rules which direct the course of

proceedings to bring parties into court and the

course of the court after they are brought in."

[Citation.]'" <u>Petco</u>, 363 Ill. App. 3d at 621, 841

N.E.2d at 1071.

Whether child-support payments continue to accrue under an abatement order is more than a matter of procedural law. Accordingly, Rule 296(f) should not be applied retroactively in this case. Even if it did apply retroactively, child support would have been abated without accrual until February 1, 1989, and then accrued at $10 per week.

Candice's amended complaint asked that child support be modified to reflect the amount Robert would have paid had he reported his employment to the IDPA as and when required. However, the essence of Candice's action is to retroactively modify Robert's support obligation after the child reached majority.

"Support may be modified only as to installments accruing after the nonmoving party has been notified that a motion to modify has been filed and only upon a showing of a substantial change in circumstances." <u>Zukausky</u>, 244 Ill. App. 3d at 618, 613 N.E.2d at 398, citing Ill. Rev. Stat. 1991, ch. 40, par. 510(a). Section 510(d) of the Dissolution Act provides in part "[u]nless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child, except as otherwise provided herein." Ill. Rev. Stat. 1987, ch. 40, par. 510(d).

While the appellate court has stated that a "circuit court is not statutorily barred from imposing a retroactive child[-]support obligation upon a respondent in an

˘ 20 ˘

ongoing child[-]support proceeding who, contrary to the court's directive, has failed to inform the court of his having resumed employment" (Williams, 191 Ill. App. 3d at 317, 547 N.E.2d at 731), Candice has not cited any authority to file the petition seeking the retroactive modification of child support when more than three years have passed since the child reached majority.  The only statutory authority that grants the authority to file for a modification of child support after majority is section 513 of the Dissolution Act (750 ILCS 5/513(a)(1), (a)(2) (West 2000) (application for support or expenses may be made before or after child has reached majority)).  Section 513 only provides for postmajority support or expenses in two circumstances: (1) when the child is physically or mentally disabled, and not otherwise emancipated; and (2) for postmajority educational expenses.  750 ILCS 5/513(a)(1), (a)(2) (West 2000).  Candice has not alleged the parties' child is physically or mentally disabled, nor has she asked for educational expenses.  Thus, I find no authority for a postmajority retroactive modification of a child-support obligation allegedly owed during the child's majority.

Candice claims "[t]he long-term effect of allowing Robert to avoid the payment of support is to abrogate the plan established by the legislature and mandated by Congress to provide for child support."  While the abatement of Robert's support was likely meant to be temporary, given the trial court's later orders ordering Robert to appear and produce a log of potential employers, it became permanent because Candice took no action against Robert until three years after the child reached majority.  In addition to not providing any support for her argument that a child-support obligation can be retroactively modified three years after the child reached majority, Candice failed to provide the court with any explanation for her inaction against Robert from July 6,

˘ 21 ˘

1989, when the court placed the cause on the inactive docket, until the child reached majority in January 2001.

I fully understand and appreciate the majority's desire to allow this action to proceed because the public policy of this state requires deadbeat parents to support their children.  However, Candice's inaction, along with the IDPA, the State's Attorney, and/or the AG, dictates a result denying the requested relief.  Moreover, the General Assembly, not the courts, provides the framework for the implementation, enforcement, and achievement of this state's public policy.  Here, the majority's holding finds no support in the law, and in my view, citing public-policy considerations as a rationale for disregarding settled law does not justify the majority's action to reach a preferred result, however desirable.